**De Norval BRATTEN, Petitioner,**

v.

**The STATE OF DELAWARE,
Respondent.**

**No. 114.**

United States District Court
D. Delaware.

Dec. 23, 1969.

**644**

Henry A. Wise, Jr., Wilmington, Del., for petitioner.

Francis A. Reardon, State Prosecutor, Wilmington, Del., for respondent.

## OPINION

LATCHUM, District Judge.

De Norval Bratten, a state prisoner, petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On September 23, 1968 petitioner and a co-defendant were convicted by a jury in the Superior Court of the State of Delaware in and for New Castle County for the robbery of a liquor store near Wilmington on August 7, 1967. There-

after he was sentenced to a term of imprisonment in the custody of the Delaware Department of Corrections.[1] The petitioner first challenged the constitutional validity of his pretrial identification by a motion to suppress filed in the Superior Court prior to trial. After a hearing, the motion to suppress the eye-witness identification evidence was denied. State v. Bratten, 245 A.2d 556 (Del.Super.Ct.1968). On appeal from his conviction to the Delaware Supreme Court the petitioner again questioned the constitutional validity of his pretrial identification and this issue was again decided adversely to the petitioner.[2] Consequently, petitioner's state remedies have been effectively exhausted even though he has not instituted any state court post-conviction proceeding. The present petition therefore is properly before this Court. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

Relying upon the principles announced in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), petitioner again contends here that his police instigated pre-arrest confrontation, in which he was identified by the victim of the robbery, was conducted in violation of his right to counsel under the Sixth and Fourteenth Amendments, and in any event was "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to amount to a denial of due process of law.

The facts pertinent to this proceeding may be summarized as follows:[3]

---

1. At the time this petition was filed Bratten was serving his sentence of imprisonment in the custody of the Department of Corrections but by the time of the hearing petitioner had been granted a parole. It is clear, however, that a state prisoner who is paroled under the custody and control of a parole board is still effectively "in state custody" and the present petition is properly before this Court.

Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

2. Bratten v. State, Del., 257 A.2d 230.

3. The parties stipulated that the facts determinative of this proceeding are fully reflected in transcripts of the suppression hearing and trial in the state court and the other state court records.

On the evening of August 9, 1967 at about 8 p. m., the Townrose Liquor Store, on New Castle Avenue, near Wilmington was robbed by two Negro men. In response to a report of the robbery by the liquor store clerk, Earl Hudson, Detective Firman Argoe of the Delaware State Police immediately proceeded to the liquor store and undertook an investigation of the incident. The victim, Mr. Hudson, gave a general description of the two men to Detective Argoe who passed that information on to Trooper William Steen of the Delaware State Police. Both robbers were described as tall, thin, light complexioned Negroes, one with a mustache and the other a "Rap Brown" hairdo.

At approximately 1 a. m. that evening four Negroes were involved in a minor automobile accident in the parking lot of the Kent Manor Motel which is located in the vicinity of the robbed liquor store. The accident had been reported to the State Police by the motel manager. When Trooper Steen arrived at the motel to investigate the accident, he noted that two of the four Negro men involved in the accident resembled the description of the robbers related to him by Detective Argoe at the robbery scene some five hours earlier. Trooper Steen reported his observations by telephone to Detective Argoe at Headquarters. Detective Argoe then telephoned Mr. Hudson, the robbery victim, and asked him to meet the detective at the Kent Manor Motel office because "possibly the people who robbed him may be there." (M.T. 15).[4]

Mr. Hudson arrived at the motel office at about 1:30 a. m. and after looking through the office window pointed to the petitioner and said: "I believe that is one of them, but he wasn't wearing glasses" * * * "If I could have a closer look I would know for sure." (M.T. 16). Hudson then entered the office, and Detective Argoe asked the petitioner to remove his glasses. When petitioner complied, Hudson said: "That's the man" and looked at him directly in the face and said "You shouldn't have done it." (M.T. 16). Mr. Hudson then positively identified Jerry Harris, petitioner's co-defendant in the state trial, as the other man who had robbed him. At the time of the confrontation there were present in the motel office, three police officers, the motel manager, one or two motel employees and two other Negro men in addition to the two suspects.

Petitioner's conviction was based entirely on Mr. Hudson's identification testimony. However, in testifying he admitted that he would have been unable to identify the petitioner at the time of trial had he not seen the petitioner at the motel confrontation. (M.T. 31, T.T. 16–17).[5] Mr. Hudson also testified that at the time of the robbery, the store was well lighted (M.T. 26, T.T. 7), that neither of the men wore masks (M.T. 29, T.T. 7), that both were in the store on two occasions for about five minutes each inquiring about the beer they wished to purchase (M.T. 24–26, T.T. 7–8), that Harris was the one who throttled him around the neck (M.T. 28, T.T. 4–5), and as he did so he was spun around to face petitioner standing about two feet away (T.T. 11) who then rifled the cash register, (M.T. 28, T.T. 9) and that he was able to identify petitioner positively at the motel from petitioner's features, build and particularly by his bushy hair (T.T. 11, 19) since the confrontation took place while the robbers' features were so fresh in his memory (M.T. 33, T.T. 16, 20).

## I Right To Counsel

As previously stated, petitioner first claims that in the light of the Sixth Amendment right to counsel made applicable to the states through the Fourteenth Amendment, it was constitutionally impermissible for the police, in the absence of counsel for the petitioner, to

---

4. M.T. refers to transcript of testimony at state suppression hearing.

5. T.T. refers to the state court trial transcript.

arrange the pre-arrest confrontation for identification purposes in this case. Petitioner contends that the expressions contained in *Wade*, *Gilbert* and *Stovall* compel this conclusion, particularly the broad language in *Stovall* that a "confrontation is a 'critical stage', and that counsel is required at all confrontations." 388 U.S. at 298, 87 S.Ct. at 1971. Thus, petitioner argues that since there was a confrontation and petitioner was without counsel, the identification evidence should have been suppressed.

■ The Court believes the petitioner presses the language of these cases too far in the light of the present facts. The Sixth Amendment confers the right to counsel to an "accused" in "all criminal prosecutions" and while *Wade*, *Gilbert* and *Stovall* make it clear that the right to counsel is required at all "critical stages", including identification confrontations of one *accused* or *charged* with a crime, they do not hold that the right attaches as soon as mere suspicion is aroused.

In *Wade* and *Gilbert* the condemned out-of-court identification confrontations occurred without giving prior notice to counsel *after* the defendants were represented by counsel and *after* the defendants had been accused, arrested and charged with crimes. In *Stovall* the confrontation took place after the defendant had been accused, arrested and brought before the Court for arraignment and before the appointment of counsel. Thus, it appears from these cases that the Supreme Court considers that a confrontation is a "critical stage" in a criminal prosecution, requiring counsel to be present only when a defendant becomes an "accused" within the rule of

Escobedo v. Illinois, 378 U.S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977 (1964).

But, the situation in the present case at the time of the confrontation had come nowhere near the accusatory stage depicted in *Escobedo*. When the confrontation occurred the case was being generally investigated as an "unsolved crime"; the petitioner had not become an accused within the *Escobedo* rule. His freedom of action had not been curtailed in any substantial way related to the alleged robbery within the rule of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The petitioner was neither arrested nor taken into any form of custody until after the confirmed identification by the victim.[6] Only then was the petitioner an "accused" and a "critical stage" of the prosecution reached entitling him to the right to counsel.

■ Furthermore, it is inconceivable that lawyers could be provided for all persons coming under suspicion in the early stages of all criminal field investigations, particularly when they take place far from the police station and courthouse at odd hours of the day and night. Whatever dangers may be inherent in such investigatory confrontations, it is not realistic to speak of the right of counsel at these preliminary stages. Since it is not feasible to provide counsel at this stage, it is difficult to reason that the Sixth Amendment or the "critical stage" analysis of the Supreme Court in *Wade* requires this Court to declare a right to counsel in this case.

The Court thus concludes that *Wade*, *Gilbert* and *Stovall* do not cover this case and that the petitioner had no right to counsel, under the Sixth and Four-

---

6. Petitioner contends that he was in "custody" at the time of the confrontation and bases this contention on Mr. Hudson's testimony, when he gave his recollection of Detective Argoe's telephone call to him: "He [Argoe] says that he thought they had a pair in custody for a hit-and-run accident and I think they were the ones that held me up and they couldn't hold them too long, that the sooner I got there, it would be better." (M.T. 29). However, Trooper Steen testified that he made no arrests in connection with the automobile accident which he was investigating (M.T. 5, 10). In fact, petitioner admitted that he remained at the motel voluntarily (T.T. 103). Thus, I do not accept Mr. Hudson's third-hand description of petitioner's status.

teenth Amendments, at the investigatory confrontation which occurred here. United States v. Davis, 399 F.2d 948 (C.A. 2, 1968), cert. den. 393 U.S. 987; 89 S.Ct. 465, 21 L.Ed.2d 449 (1968); State v. Butler, 256 A.2d 588 (Me., 1969).

## II *Due Process*

Petitioner next claims [7] that the identification confrontation which occurred in this case "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law" when the identification evidence was admitted at trial. 388 U.S. at 302, 87 S.Ct. at 1972.

■■ However, the resolution of a due process challenge to pretrial identification procedures involves an evaluation of each confrontation in the light of the "totality of the circumstances" surrounding the confrontation. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Measured by this standard, the Court cannot conclude that the petitioner was denied due process of law.

The time and place of the confrontation were reasonable and necessary under the circumstances. The confrontation took place five hours after the robbery at the motel office where the suspects were awaiting the completion of an investigation of an unrelated automobile accident. Effective police investigation certainly required a prompt determination at that time whether the suspects were involved in the earlier robbery. Prompt confrontation by the victim would have had the salutary effect (had they not been implicated) of clearing suspicion from them and permitting the investigation to continue in other directions while the trail was fresh. Moreover, the suspects were not under arrest nor was their liberty restrained. They would be at the motel only a short period of time while the automobile accident investigation was being completed. The suspicion concerning their involvement in the robbery had to be resolved promptly.

Indeed, the immediate identification by the victim within the short time following the robbery fosters the desirable objective of fresh and accurate identification rather than misidentification. Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104 (1968). Here the victim had a reasonable opportunity to observe the robbers at the scene of the crime. They were in the store on two occasions for about five minutes each while the victim waited on them, the store lighting was good, the robbers were not masked, the victim observed the petitioner at very close range, the confrontation took place while petitioner's features were fresh in the victim's memory, and the identification, when made, was positive.

Furthermore, the Court does not find that the composition of the group at the confrontation, over which the police exercised no control, was unduly suggestive. There were at least four Negro men in the motel office when the victim viewed them through the window. Those in the motel office were not in a formal lineup but were casually sitting,[8] lying or standing in the office. True, two of the Negro men were shorter than the robbery suspects, but there is no indication that this was obvious when the victim viewed the occupants of the office through the window and first made his identification of the petitioner (M.T. 21–22).

Finally, it cannot be held that Detective Argoe's comments to the victim were impermissibly suggestive. When Detective Argoe telephoned Mr. Hudson at one o'clock in the morning he said: " * * * the people that robbed him may be at that office" (M.T. 14). In further elaboration of his conversation with Mr. Hudson, he testified: "I asked him if he could meet me at that hour of the morning, and I realized it was late, if it would be possible for him to meet me at the motel office, that possibly the people who

---

7. This claim was raised in the petition and argued orally at the hearing although it was not covered in the briefs.

8. Petitioner was seated in a chair and Harris was lying on a couch. (M.T. 30).

robbed him may be there." (M.T. 14–15). How else in the circumstances could Detective Argoe have prevailed upon Mr. Hudson to leave his home at such an hour without informing him that the purpose was to view possible robbery suspects. Absent a clear showing of a deliberate intent to be unduly suggestive or to compose an intentionally suggestive show-up by the police, which the present record does not provide, the Court concludes that the investigatory confrontation, in the light of the totality of the circumstances, comported with due process of law.

Accordingly, an order will be entered denying the writ and dismissing the petition.