255 So.2d 723

**STATE of Louisiana**

**v.**

**Ernest BLAND and Herbert Frazier, Jr.**

**No. 51115.**

Dec. 13, 1971.

Samuel H. Collins, Barry F. Viosca, New Orleans, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiffs-appellees.

HAMLIN, Justice:

Defendants were convicted of Armed Robbery, LSA–R.S. 14:64; Ernest Bland was sentenced to serve forty years at hard labor in the Louisiana State Penitentiary, and Herbert Frazier, Jr. was sentenced to serve twenty-five years. They appeal to

this Court from their convictions and sentences, presenting for our consideration three Bills of Exceptions reserved during the proceedings.

### BILL OF EXCEPTIONS NO. 1

Bill of Exceptions No. 1 was reserved to the trial court's overruling defendants' Motion to Suppress the Identification and their Motion to Suppress the Evidence.

The following Per Curiam of the trial judge to this Bill of Exceptions describes in detail the facts connected with the instant robbery, the identification of defendants, and the seizure of the evidence.

"Bill of Exception No. 1 was taken to my overruling of the motion to suppress the evidence and the motion to suppress the identification. The hearing on the motion to suppress both the evidence and the identification disclosed that the robbery occurred at about 8:25 P.M. on the date in question; that during the robbery two of the people that were in the store immediately prior to the robbery secreted themselves in a back room where they were in a position to see the two defendants during the entire time the holdup took place. The third person, who was the victim of the robbery also testified as to what occurred. All three witnesses were positive in their identification that the two defendants were those who had committed the armed robbery charged in the bill of information. Within twenty minutes of the time that the defendants entered the store and the robbery began, they had been placed under arrest having been arrested less than two blocks from the place of the commission of the crime and within the twenty minute interval they had been brought back to the scene of the offense and were positively identified by the three persons who were present during the robbery. The evidence further disclosed that at the time the two persons who secreted themselves in the back of the establishment called the police a member of the New Orleans Police Department was parked in his police vehicle diagonally across the street from the place where the holdup occurred; that he observed the defendants during the entire time the robbery took place and also the time they left the store. It was after this time, that is after they had left the store that he realized that what had appeared to him before to simply be something unusual had in fact been a robbery. He observed the path taken by the two defendants and radioed to all the cars in the vicinity of what he had observed and where the defendants were heading. There were two other cars in the near vicinity who, upon receiving the call, drove into Palmer Park which is immediately adjacent to the location where the holdup occurred. Once in the

park they observed two persons described to them by the officer who, on the stand positively identified the two defendants as the persons whom he had seen in the store during the holdup. Both the defendants were captured in the park still having in their possession both the money and the property taken in the robbery as well as each being in possession of a weapon. The testimony further disclosed that the officers retraced their steps back from the place where the defendants were apprehended back to the store and recovered further evidence in the case. It was at this time after the apprehension of the defendants with the evidence on their person that they were immediately taken back to the place of the robbery less than two blocks from the place of the arrest where they were positively identified by the persons present during the holdup as well as by the officer who observed them the entire time they were in the store during the course of the holdup. There can be no question that the arrest was a good one based upon probable cause, both from the description given by the victims as well as from the information given by their fellow officer who was for all intensive purposes an eye witness to the commission of this offense. All the evidence seized by the officers were taken in connection with and incidental to the arrest of the defendants and the identification was made within twenty minutes of the time of the commission of the offense. As such, I felt that the identification had been made properly and without any duress or influence being exerted upon the witnesses; and, further, since the officer himself was an eye witness that this further corroborated the validity of the identification, since he never lost sight of the defendants from the time they left the store until they went to the park and were placed under arrest. As such, I overruled the motion to suppress the evidence as well as the motion to suppress the identification."

In their Motion to Suppress the Identification, defendants contended that they were viewed under circumstances which suggested that they were the perpetrators of the crime for which they were charged, and that the viewing violated the principles announced by the United States Supreme Court in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Stovall v. Denno, 388 U.S. 293, 87 S. Ct. 1967, 18 L.Ed.2d 1199 (1967). They further contended that the averred suggestion so tainted the identification as to cause any identification of the defendants to be in violation of their rights as protected by the due process clause of the Fourteenth Amendment to the United States Constitution.

The Motion to Suppress the Evidence averred:

"1. That the evidence to be used against the defendants whether physical evidence or any form of statement or confession, was not seized or obtained incidental to a valid arrest and/or search;

"2. That the evidence to be used against the defendants was seized or obtained as the result of unlawful search without a valid warrant and without probable cause."

In this Court, counsel for the defendants urge in substance the same contentions and arguments raised in the motions, supra. It is contended that the minimal standards of Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), and United States v. Wade, supra, were far exceeded.

It is the State's position in this case that the in-the-field identifications of Bland and Frazier were valid; that the warrantless arrests were legal; and that the guns, money, clothing, etc., were either seized in a constitutional search incident to the arrests, or were retrieved by the police after being abandoned by the accused as they fled the scene of the crime.

We have read the testimony of record and approve the findings of the trial judge as to the totality of the circumstances existing at the time of the in-the-field identifications. "* * * the resolution of a due process challenge to pretrial identification procedures involves an evaluation of each confrontation in the light of the 'totality of the circumstances' surrounding the confrontation. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). * * *" Bratten v. State of Delaware, D.C., 307 F.Supp. 643, 647 (1969). See, State v. Junius and authorities therein cited, 257 La. 331, 242 So.2d 533 (1970). "There is no prohibition against a viewing of a suspect alone in what is called a 'one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy. The rationale underlying this is in some respects not unlike that which the law relies on to make an exception to the hearsay rule, allowing spontaneous utterances a standing which they would not be given if uttered at a later point in time. An early identification is not error. Of course, proof of infirmities and subjective factors, such as hysteria of a witness, can be explored on cross-examination and in argument. Prudent police work would confine these on-the-spot identifications to situations in which possible doubts as to identification needed to be resolved

promptly; absent such need the conventional line-up viewing is the appropriate procedure." Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104, 1106 (1968).

The character of the persons observing the instant robbery and its perpetrators was such that prompt identification of the suspects was required. The observers—the victim and his helper and the member of the New Orleans Police Department—were persons who were in frequent contact with many people; their work required such contact; it was therefore necessary that they view the suspects immediately after the robbery in order to avoid blurred or faded images.

We do not find United States v. Wade, supra, apposite to this prosecution; in great part, Wade was concerned with line-up identification; the rules with respect to line-up identification and in-field identification are not entirely comparable. State v. Richey, 258 La. 1094, 249 So.2d 143 (1971). The facts of Stovall v. Denno, supra, are not similar to the instant facts; the explanation of Wade in Denno is not controlling herein.

A review of the totality of the circumstances attending the instant in-field identification constrains us to find that the identification was completely without suggestion and devoid of doubt or fear of mistake. It was likewise not conducive to irreparable mistaken identification. All standards of Simmons v. United States, supra, were met. The trial judge correctly overruled the Motion to Suppress the Identification for the cogent reasons stated by him in his per curiam, supra.

■ The facts, supra, show that the arresting officers had reasonable and probable cause to arrest defendants without a warrant of arrest. LSA–C.Cr.P. Art. 213(3); State v. Dell, 258 La. 1024, 249 So.2d 118; State v. Millsap, 258 La. 883, 248 So.2d 324.

" * * * When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the

area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). "Abandoned property does not fall within the protection of the Fourth Amendment, and police have the right to retrieve it. * * " State v. Winesberry, 256 La. 523, 237 So. 2d 364.

■■ Having found, supra, that the police officers made a valid and legal arrest, we now find (1) that the evidence used against the defendants was seized and obtained incidental to a valid arrest and/or search; and (2) that the evidence used against the defendants was not seized or obtained as a result of unlawful search without a valid warrant and without probable cause. We also find that the officers properly retrieved the controversial evidence—a pistol—allegedly abandoned by one of the defendants. We conclude that the trial judge acted correctly in overruling the Motion to Suppress the Evidence.

Bill of Exceptions No. 1 is without merit.

## BILL OF EXCEPTIONS NO. 2

Bill of Exceptions No. 2 was reserved when the trial judge overruled defense counsel's objection to the introduction in evidence of S–1 through S–8. (The trial judge sustained an objection to the introduction of S–9, a cap and sunglasses.)

In substance, counsel argue that defendants were prejudiced by the introduction of the allegedly inadmissible evidence. State v. Foret, 196 La. 675, 200 So. 1. They contend that since proper identification, connexity, patent materiality, and initial links in the chain of custody had not been established by competent evidence, but rather by speculative, conflicting, and inconsistent testimony, the State's evidence was inadmissible.

■■ We find no merit in counsel's contentions. The evidence introduced was relevant, and its connexity was a matter for the jury to decide. State v. McQueen, 257 La. 684, 243 So.2d 798; State v. Wright, 254 La. 521, 225 So.2d 201.

The following per curiam of the trial judge, with which we agree, explains his reasons for permitting the introduction of the controversial evidence:

"Bill of Exception No. 2 was taken to the introduction of evidence of State's Exhibits 1 through 9. Defense states that the objection was sustained as to the cap and glasses and was overruled as to the other items which were:

"S–1— .22 Caliber pistol

"S–2— .22 Automatic

"S–3— 3 cartons of Winston Cigarettes

"S–4— a bag containing 4 packs of Winston Cigarettes and 4 packages of Jucyfruit gum

"S–5— Black scarf

"S–6— Green jacket

"S–7— Release for $123.34

"S–8— Black jacket

"I permitted the items into evidence since they were seized by the officers incidental to and in connection with the arrest of the two defendants. All the items offered by the state were properly chained through the testimony of all the witnesses involved in the case including the victim, the officer who had been stationed outside of the place of business as well as the officers who made the arrest and recovered the items. Each was accounted for in accordance with law, having been properly initialed by all officers who handled same and held in the custody of the testifying officers until same were placed on the evidence book. For this reason and the reasons stated in my overruling the motion to suppress I permitted the objects into evidence. · It might be noted that all of the items re-

covered in the possession of the defendants as well as along the route were those which were taken during the robbery, including the currency found on the defendants as well as the guns used in the robbery, all having been described by the witnesses as having been used in the robbery."

Bill of Exceptions No. 2 is without merit.

## BILL OF EXCEPTIONS NO. 3

Bill of Exceptions No. 3 was reserved when the trial court overruled defendants' Motion for a New Trial.

The Motion for a New Trial averred that the verdict was contrary to the law and the evidence, and that "a" Bill of Exceptions reserved during the proceedings showed prejudicial error towards the defendants.

The two Bills of Exceptions discussed and determined, supra, cover all averments made in the Motion for a New Trial. There is no need for repetition. A review of this entire record shows that no prejudicial error was committed by the trial judge.[1] There was no violation of

---

1. The trial judge's Per Curiam to Bill of Exceptions No. 3 correctly states: "Bill of Exception No. 3 was taken to the overruling of the motion for new trial. The motion for new trial merely states that the verdict is contrary to the law and the evidence. This raises noth-

ing new for consideration except to state in my opinion the credible evidence and testimony in this case established beyond any reasonable doubt the guilt of both of the accused in this case and the jury so found by their verdict of guilty as charged as to each defendant. I felt

the defendants' constitutional rights during the proceedings.

Bill of Exceptions No. 3 is without merit.

For the reasons assigned, the convictions and sentences are affirmed.

255 So.2d 729

**STATE of Louisiana**

**v.**

**James LAWRENCE.**

**No. 51295.**

Dec. 13, 1971.

there was ample testimony by the victim, the two witnesses who were present in the store as well as the officer who was stationed outside the store in addition to the officers who made the arrest to establish beyond any doubt whatsoever the fact that these two defendants were the same two persons who had perpetrated the robbery charged in the bill of information. Paragraph 2 of the motion for new trial merely states the bill of exceptions reserved during the proceedings shows prejudicial error. This raises nothing that has not been previously covered by my other per curiams in this case."