275 So.2d 765 (1973)
STATE of Louisiana
v.
Otis NEAL et al.
No. 52625.
Supreme Court of Louisiana.
March 8, 1973.
Dissenting Opinion March 20, 1973.
Rehearing Denied April 19, 1973.
*767 Zelden & Zelden, Sam Monk Zelden, Girard J. Fernandez, New Orleans, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
PER CURIAM.
Otis Neal, Raymond Horton, and Harold Wilson were jointly charged by a Bill of Information[1] and tried for the crime of armed robbery. The jury returned a verdict of guilty and each was sentenced to serve a term of fifteen (15) years in the state penitentiary. All three of the defendants have appealed. Six, six and nine bills of exceptions were reserved and perfected by each of the defendants, respectively.

Bills of Exceptions Presented by Otis Neal
Bill of Exceptions No. 1 was taken to the trial judge's denial of the pre-trial Motion to Quash the Bill of Information. The accused argues three grounds on which he asserts the Motion to Quash should have been granted. First, "R.S. 14:64 is unconstitutional because a defendant under this law must be at least seventeen (17) years old to be charged and may *768 be sentenced to a term of imprisonment for ninety-nine (99) years which is (in) excess of his natural life under the American Experience Mortality Tables and under these circumstances such a prosecution under the laws of the State of Louisiana must be by a Grand Jury indictment." Second, defendant argues that R.S. 14:64 is unconstitutional because it provides that there shall be no parole, probation, or suspension of sentence and is therefore cruel and unusual punishment; thirdly, he alleges "there was no evidence in possession of the State to support the filing of a charge of Armed Robbery . . ."
Admittedly, the defendant acknowledges those cases which have held in the past that the type of punishment (and not the severity as to time imposed) determines what is prohibited as cruel and unusual punishment. State v. Howard, 262 La. 270, 263 So.2d 32, 35 (1972) and the cases cited therein. Defense counsel cites the recent U.S. Supreme Court holding in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) which abolished the death sentence thereby limiting punishment to life imprisonment, creates a more serious penalty for armed robbery whereas a capital crime offender becomes eligible for parole after serving ten years and six months of a life sentence. Notwithstanding the state of the law at the time this defendant was tried (January, 1971) our state legislature has since amended La.C.Cr.P. art. 817 to provide for penalties to life imprisonment "without benefit of parole, probation, commutation or suspension of sentence" for capital crimes. Acts 1972, No. 502.
As this Court said in State v. Howard, supra:
"* * * It is only in theory that rehabilitation is provided for those convicted of other crimes. All those convicted of armed robbery are treated alike. Defendant has not been denied the equal protection of the laws."
In regard to the defendant's third ground for his Motion to Quash, the record discloses sufficient evidence on which to warrant the District Attorney accepting the charge. Neal was reported arrested when found sitting in the alleged blood-spattered getaway car, parked in front of the hospital wherein a co-defendant was getting treatment for gunshot wounds. (R-194, 204, 207, 218).
There is no merit to this bill.
Bill of Exceptions No. 2 was reserved to the trial court's denial of some of the particulars requested by the defendant. We find no error. The trial court properly denied any more details than the State had already given to the defendant. It is well settled that the State is not required in an answer to a request for a bill of particulars to set out in detail the evidence on which the prosecution will rely to obtain conviction. We find the State furnished the defendant all the information required by law to prepare his defense and to satisfy all constitutional requirements. State v. Cripps, 259 La. 403, 250 So.2d 382 (1971). See also State v. Crook, 253 La. 961, 221 So.2d 473 (1969).
This bill lacks merit.
Bill of Exceptions No. 3 alleges the trial court erred in permitting police officer Kent Simms' testimony to be received into evidence despite the fact he was not sequestered pursuant to an earlier order by the court that all witnesses be sequestered except character witnesses.
We are in accord with the trial court's Per Curiam on this bill to the effect that Officer Simms' testimony did not contradict or explain any previous testimony of other witnesses and was not prejudicial. The only question posed to Officer Simms (who also served as Special Investigator for the District Attorney's Office) was if he had made any inquiry into whether or not a lineup had been held, and he answered, "I did." Under these facts *769 the trial judge exercised sound discretion in allowing this witness to testify, and his ruling was not prejudicial to the defendant. La.C.Cr.P. art. 764. See State v. Edwards, 257 La. 707, 243 So.2d 806 (1971). See also, State v. McAllister, 244 La. 42, 67, 150 So.2d 557 (1963) and the cases cited therein. Cf. State v. Lewis, 250 La. 876, 199 So.2d 907 (1967).
Bill of Exceptions No. 3 is without merit.
Despite uncontradicted testimony of the police officers that the defendant freely and voluntarily gave statements after having been advised of his constitutional rights to have counsel present under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), defendant reserved Bill of Exceptions No. 4 alleging error in the admissibility of the statements. Defense counsel argues further that the waiver, if any, was not intelligently made. While the record reveals that the defendant did not sign any waiver-of-rights form (which is not vital to the admissibility of the statements in question) he did sign his exculpatory statement. Although the lack of a signed written waiver of rights form is one element for our consideration on the issue, we do not regard it as controlling in this situation. In any event, such a factual determination by the trial judge is given great weight and will not be disturbed upon appeal unless clearly erroneous. State v. Cosey, 261 La. 550, 260 So.2d 620 (1972).
The testimony of the interrogating officers in regard to repeatedly advising the defendant not to sign the waiver form because Neal "didn't understand what the whole thing was," was considered by the trial judge and found not conclusive of any coercion. State v. Vale, 252 La. 1056, 215 So.2d 811, 819 (1968). Further, the trial judge permitted a thorough cross-examination of the police officers after defense counsel insisted that apart from the judge's adverse ruling on the statement's admissibility, "the jury has a right to pass upon the admissibility of this document. . .". Apparently, the jury accepted the propriety of the police action also.
We do not find error in the trial court's factual finding that the statements were not the product of coercion or duress, and that they were freely and intelligently given after the defendant was fully advised of his constitutional rights as required by Miranda v. Arizona, supra.
There is no merit to this bill.
Bill of Exceptions No. 5 was reserved when the trial judge denied Neal's Motion for a New Trial. This Motion was based on the following grounds: (1) on the assertion that R.S. 14:64 is unconstitutional for reasons set forth in Bill of Exceptions No. 1; (2) that there was no evidence upon which to prosecute the defendant for the completed crime of armed robbery in this case; (3) that the trial judge's charge to the jury was serious and prejudicial error; (4) that a less-than-unanimous jury verdict is unconstitutional; and (5) that the verdict of the jury is contrary to the law and evidence and that the defendant was not proven guilty beyond a reasonable doubt.
As to the defendant's first point, we have disposed of this argument in Bill of Exceptions No. 1 as not having any merit. Neither do we find the grounds (3), (4) and (5) to be tenable.
As to (4), the United States Supreme Court in Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) upheld the constitutionality of the Louisiana Constitution, Article 7, Section 41, and the La.C.Cr.P. art. 782, both of which deal with the rule that a felony such as armed robbery shall be tried by a jury of twelve, nine of whom must concur to render a verdict. In the instant case, the polling of the jurors disclosed nine out of the twelve jurors were in favor of conviction as charged, one for guilty of simple robbery and two not guilty. As to (3), we do not find the defendant objected at the *770 time the trial judge made his allegedly prejudicial comment in his charge, therefore he is deemed to have waived any error contained therein. La.C.Cr.P. 841.
As to (5), the allegation that the verdict was contrary to the law and evidence, this Court has repeatedly held that without more, such a general allegation presents nothing for review. State v. Grey, 257 La. 1070, 245 So.2d 178 (1971).
The defendant's second ground on which he bases his objection to the denial of a Motion for a New Trial is to the effect that one of the essential elements of the crime of armed robbery was not proven. At issue is whether or not anything of value was actually taken by the accused or his accomplices from the person of Mr. Howard, the alleged victim or from the gunshop, the scene of the alleged robbery.
The alleged victim-owner of the gunshop, Mr. Eugene Earl Howard, testified that he "had an armed robbery attempt in his shop". Later on in his testimony Mr. Howard answered the District Attorney's question "Did he (co-defendant Wilson) take it (Mr. Howard's wallet) out of your hand?" by saying, "He took it out of my hand, but as he reached downlooked down and reached down for it, I came out with my gun, and fired." A few questions later, Mr. Howard testified, "Well, he dropped the wallet, and started running out. . ."
On cross-examination Mr. Howard admitted that nothing was taken from his person or his shop. He also answered defense counsel's question querying how could he (Mr. Howard) tell that he had hit the alleged robber (Wilson) when he fired at him, by saying that "I knocked him down. He dropped my wallet. There was blood all over the counter."
None of this testimony was contradicted. Neither did defense counsel on cross-examination of the only other state's eye-witness to the alleged robbery, Mr. Donald Dillon, a customer in the store at the time of the commission of the crime, bring out anything on the point as to whether the defendants had not held Mr. Howard's wallet prior to the shooting and fleeing the scene. Defense counsel argues that notwithstanding the two basic elements of the crime of armed robbery having been amply proven, the fact that "Mr. Howard fired at the time he was handing the wallet with one hand while firing with the other hand was the cause of the frustration which prevented the crime of armed robbery. It was at best an attempted armed robbery." This question of fact was before the jury to weigh and evaluate in their consideration of the verdict. Obviously, they chose to believe that indeed the robber did have, at some time if only momentarily, Mr. Howard's wallet in hand.
We are in accord with the trial court's Per Curiam to the effect that the slightest asportation of anything of value. . . the slightest deprivation for the slightest period of time . . . the slightest segregation of the property moved the slightest distance is sufficient to satisfy the elements of a theft, which is part of the crime charged.[2] A theft occurs, when the thing is taken, although it may remain in possession of the thief for only seconds. See, Comments, LSA-R.S. 14:67. See also 2 Wharton's Criminal Law and Evidence (12th ed.) Robbery, Section 552.
The trial judge properly denied the defendant's Motion for a New Trial. This bill of exceptions is without merit.
Bill of Exceptions No. 6, taken to the trial court's denial of the defendant's Motion in Arrest of Judgment simply tracks errors alleged in the previous Motion for a New Trial, by reference, and has been disposed of by this Court as having no merit. In any event, the grounds for arrest of *771 judgment are limited by La.C.Cr.P. art. 859, none of which fit the defendant's pleading.
The merit in this bill is also lacking.

Bills of Exceptions Presented by Harold Wilson
Co-defendant Harold Wilson reserved and perfected nine bills of exceptions during the proceedings but on this appeal he has urged this Court's consideration of only bills of exceptions Nos. 1, 3, 6, 7, 8 and 9. While the remaining bills may be considered abandoned, State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972), we have nevertheless reviewed them and found them all to be without merit.
Bill of Exceptions No. 1 was taken to the trial court's denial of the Motion to Suppress Identification of the defendant by Donald Dillon, a state's eye-witness at the scene of the crime. The defense counsel alleges that the conditions under which the initial out-of-court identification were made violated the defendant's constitutional rights under United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and that the testimony short of positive identification in-court was inadmissible.
We do not find United States v. Wade, supra, apposite to this prosecution; in great part, Wade was concerned with lineup identification. The rules with respect to line-up identification, and in-field identification (the identification was made of the defendant undergoing treatment in the hospital after he had fled the scene) are not entirely comparable. State v. Richey, 258 La. 1094, 249 So.2d 143 (1971). See also State v. Bland, 260 La. 153, 255 So.2d 723 (1971). Of course, proof of infirmities and subjective factors, such as uncertainty of a witness was available to defense counsel to explore on cross examination and in argument.
A review of the totality of the circumstances attending the hospital identification constrains us to find that the identification was completely without suggestion and devoid of doubt or fear of mistake.
In State v. Franklin, 255 La. 830, 233 So.2d 532 (1970), reiterated in State v. Pierre, 261 La. 42, 259 So.2d 6, 9 (1972), this Court held:
"* * * The jury was made well aware that the witness was not making a positive identification of the accused as one of the persons seen by him, but only that he fit the general description of such persons. It was, we think, relevant circumstantial evidence, and that the objection goes to the weight rather than the admissibility of the testimony. It differs little, if any, from testimony as to the color or kind of apparel worn by a person at the scene of the crime when that is material, although circumstantial only."
Such a factual determination by the hearing judge is given great weight and will not be disturbed upon appeal unless clearly against the preponderance of the evidence. State v. Hall, 257 La. 253, 242 So.2d 239 (1970).
This bill is without merit.
Bill of Exceptions No. 3 taken by co-defendant Wilson was identical with that of co-defendant Neal's Bill of Exceptions No. 3 discussed above and compels the same result to this bill. This bill is without merit.
Bills of Exceptions Nos. 6 and 8 were taken when the trial court allowed State's exhibits S-1 and S-4 (a .25 calibre gun and a .25 calibre shell casing) into evidence. Counsel alleges that "there was no proper identification of these exhibits as having been in the possession of the defendant Wilson, and there was no connexity shown between the two exhibits and the defendant, citing State v. Foret, 196 La. 675, 200 So. 1 (1941), where a conviction was reversed because of the prejudice resulting from the introduction into evidence *772 of a physical object never connected with the crime.
Here, however, the record discloses eye-witness testimony to the effect that the defendant utilized a .25 calibre pistol and the police recovered a .25 calibre pistol about ½ block from the scene of the crime and the shell casing outside on the sidewalk about ten feet from the door of the gunshop. In addition, a ballistic expert positively identified the casing as having been fired by the subject gun. "Connexity is a matter for the jury to decide, so long as the objects introduced are shown to the satisfaction of the trial judge to have some relevance, i.e., some logical or rational connection with fact sought to be proved." State v. Dillon, 260 La. 215, 255 So.2d 745 (1971). See also Wharton's Criminal Evidence (12th ed.), Section 673, p. 617.
There is no merit to these bills.
The defendant alleges two errors of law in Bill of Exceptions No. 7 pertaining to the legality of the search of the automobile found parked outside the hospital where the accused received emergency treatment for gunshot wounds allegedly inflicted by the robbery victim, and purportedly used by the defendant in his flight from the scene of the crime; secondly, the admissibility of a bloody, blue shirt found in the same automobile.
We are in accord with the trial court's Per Curiam that the evidence was properly admitted, the fruit of a legal search. "* * * The car in which the shirt was found fit the description of that in which the robbers fled . . . the blue shirt was found, blood soaked, in an automobile parked at Charity Hospital. At that very time, the defendant Wilson was receiving medical treatment in the hospital . . ."
We find probable cause for the warrantless search of the automobile. Seizure of evidence that is in plain view and that is suspected as used in the commission of the robbery for which the defendant was tried is not prohibited. State v. Edwards, 257 La. 707, 243 So.2d 806 (1971); further, a reasonable warrantless search of a mobile vehicle may be properly made. State v. Maiden, 261 La. 80, 259 So.2d 20 (1972). Such a search violates no constitutional guarantees. See Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 2d 419 (1970). Also, we restate, that ultimately, connexity of physical evidence is a factual matter for determination by the jury. State v. Dillon, supra; see also State v. Nelson, 261 La. 153, 259 So.2d 46 (1972).
The merit in this bill is lacking.
Bill of Exceptions No. 9 was identical with co-defendant Neal's second ground for a Motion for a New Trial in Neal's Bill of Exceptions No. 5. We are compelled to find the same result as to this bill.
This bill is without merit.

Bills of Exceptions Presented by Raymond Horton
All the six bills of exceptions reserved and perfected by co-defendant Horton have been discussed in the treatment of the bills advanced by his co-defendants Neal and Wilson. For the same reasons that those bills have been deemed to be without merit, so too are these insubstantial.
For the reasons assigned, the convictions and sentences of all three defendants are affirmed.
BARHAM, J., dissents and assigns reasons.
BARHAM, Justice (dissenting).
Bill of Exceptions No. 4 was reserved to the court's ruling that the statements given under police interrogation by two of the three defendants were knowing and voluntary and admissible in evidence. The testimony of the booking officer, who gave the full "arrestee rights" to the defendants, stated that none of them would sign the *773 waiver of counsel or sign the waiver to make a statement. His testimony specifically is:
"A * * * I don't believe he wanted to sign it, neither one of them did. I told them the best thing for them to do would be to see their lawyer first. Not to sign it, and not to say anything.
"Q In other words, Neal did not want to sign it, huh?
"A I don't believeI don't remember exactly if he didn't want to sign it, but we advised him not to.
"Q You advised him not to sign it?
"A Well, until he talked to his lawyer not to make any statements.
"Q You advised him not to make any statement until he talked to his lawyer?
"A Yes, because he didn't understand what the whole thing was. I told him if he said anything, it could be used against him. The best thing for him to do was to talk to his lawyer before he said anything.
"* * *
"A He was undecided so I said, well the best thing for you to do is talk to your lawyer first, don't sign it." (Emphasis supplied.)
Some six hours later another officer took the two defendants who made statements and acquired admissions from them. No counsel had ever been afforded them although counsel had been promised them, and they had been instructed not to give statements until counsel spoke with them. This witness stated that the defendants were fully advised of their rights in central lockup, but that they did not sign any waiver of rights form. He opined that the statements were knowingly and voluntarily given.
The testimony of the two officers is totally inconsistent. When one officer testified as a witness for the State that the defendants did not know their rights and were confused as to what their rights were, it can hardly be said that the other officer can refute that testimony by the simple statement that the defendants gave statements after being told what their rights were. By his own admission this second officer did not offer to procure free counsel for them before taking the statements. The State has established by its own witnesses that the defendants did not understand their rights and that they were told they were entitled to counsel before beginning any statement.
I am of the impression that the State has failed to carry its burden of laying a satisfactory predicate that these were knowing and voluntary statements under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
I respectfully dissent.
NOTES
[1] A fourth defendant, Merlin Farria, was granted a severance, and the charge against him was later nolle prosequied.
[2] La.R.S. 14:64 defines armed robbery as "the theft of anything of value from the person of another or which is in the immediate control of another by use of force or intimidation, while armed with a dangerous weapon." (Emphasis added).