350 So.2d 590 (1977)
STATE of Louisiana
v.
Robert C. COLLINS.
No. 59255.
Supreme Court of Louisiana.
September 19, 1977.
Rehearing Denied October 21, 1977.
*591 Dewey E. Burchett, Jr., Thomas, Prestridge & Burchett, Bossier City, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Henry N. Brown, Jr., Dist. Atty., Harvey P. Delaune, City Atty. for Bossier City, for plaintiff-appellee.
DIXON, Justice.
Defendant Robert C. Collins was charged with the crime of armed robbery, a violation of R.S. 14:64. A jury of twelve found the defendant guilty as charged. The trial judge sentenced the defendant to a term of thirty years. The defendant assigns six errors for reversal of his conviction and sentence.
Assignments of Error Nos. 2, 3, 4 and 5 were neither briefed nor argued and are thereby deemed abandoned. State v. Matthews, 292 So.2d 226 (La.1974); State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).
The facts surrounding the commission of this crime are as follows. On December 12, 1974 William Tuwell was the attendant on duty at the Pel-State Fina Station on Airline Drive in Bossier City. At approximately 9:30 p. m. Mr. Tuwell was the only person at the station when a white male approximately thirty-five years old, six feet tall and weighing one hundred eighty-five pounds, approached the station. The man, later identified as the defendant, was dressed in a brown corduroy jacket, blue jeans, no shirt, shoulder length hair, bare *592 feet and a Fu Man Chu moustache. The defendant approached the station on foot, told Tuwell that he had run out of gas, and he came inside the station to warm himself. Tuwell permitted the defendant to enter the office at the station and the defendant then pulled out a gun (which Tuwell later described as looking like a "Lugger"), held it approximately two feet from Tuwell's head and demanded that the attendant turn over all of the money in the cash drawer. Tuwell complied, handing over $125.41 and the defendant left the station on foot. Tuwell then called the police and gave them the description of the perpetrator outlined above.
Police officers arrived within approximately five minutes, spoke with Tuwell, and then attempted to locate the defendant. Airline Drive, adjacent to the station, was undergoing widening and due to rain was very muddy. A police officer saw barefoot tracks in the mud leading from the station and was able to follow the tracks through the mud, across the street, through several backyards and over a white plank fence to the back of a residence located at 1442 Michael Street. (Two other officers were investigating a report that a man fitting the description of the robber had entered one of the houses next door to 1442 Michael Street. These two officers, Detective Bridges and Captain Lott, were at the house next door to 1442 Michael Street when the officer following the footprints found that they led to 1442 Michael Street). The officers knocked on the door at 1442 Michael Street and the defendant, Robert Collins, answered the door. Collins matched the physical description given by Tuwell, but he was wearing a T-shirt, shoes and pants other than blue jeans. After speaking to the owner of the house, Kitty Wendt, the officers informed the defendant that they were in search of the person who had robbed the service station and that he fit the physical description given to them. The police asked Collins if he was willing to go back to the service station with them and he agreed to go.
When the police returned to the station, Mr. Tuwell had already gone home, having been told to do so by his supervisor. Tuwell was called and within about twenty minutes (a total of less than an hour from the time of the robbery) he returned to the station and positively identified the defendant as the perpetrator of the robbery. The police then returned to 1442 Michael Street and Kitty Wendt granted the police permission to search the house. In the defendant's bedroom the police found a pair of blue jeans on the floor behind a chair and the pant legs were wet. In a closet in the same room the police found a brown corduroy jacket. Behind a curtain on top of a window air conditioning unit in this same room the police found a .22 caliber "Rugger" pistol. After the defendant was transported to the police station the police asked him to remove his shoes. The police found dried mud between his toes and on one of his legs.

ASSIGNMENT OF ERROR NO. 1
Prior to the trial the defendant filed a motion to suppress the in-field identification of the defendant made by the victim, Mr. Tuwell. After an adversary hearing the trial judge denied the motion. The defendant objects to the denial of the motion to suppress and the trial judge's permitting the testimony of Tuwell and the two arresting officers who testified that at the scene of the crime the victim identified the defendant as the perpetrator.
The defendant was brought back to the service station within forty-five minutes of the time that the crime was committed. When the defendant was first returned to the scene, Mr. Tuwell had already left, but he was contacted by telephone and told to return to the station. Upon arriving, Tuwell positively identified the defendant as the perpetrator of the crime. Essentially the defendant now argues that a lineup should have been conducted and that the one-on-one identification at the scene of the crime was so impermissibly suggestive as to taint the in-field identification and the subsequent in-court identification.
*593 One-on-one "show-ups" of a suspect may be used in certain circumstances without being impermissibly suggestive. Such one-on-one identifications have been permitted in situations when the accused is apprehended within a relatively short period of time after the commission of the crime and is returned to the scene of the crime for an on-the-spot identification. See e. g., State v. Maduell, 326 So.2d 820 (La. 1976); State v. Bland, 260 La. 153, 255 So.2d 723 (1971). See also, State v. Newman, 283 So.2d 756 (La.1973). The theory behind permitting such in-field identification is that prompt confrontations may promote fairness by "assuring reliability and the expeditious release of innocent suspects." State v. Maduell, 326 So.2d at 825.
In the instant case, the defendant was apprehended within forty-five minutes of the perpetration of the crime and a very short distance from the scene of the crime. He closely fit the description of the perpetrator given by the victim. Within one hour of the commission of the crime the defendant was positively identified on the scene by the victim. The light at the station was good both at the time of the crime and at the show-up. There is no indication in the record that the identification by the victim was anything but spontaneous, nor that the policemen in any way influenced the identification. Although the victim was with the defendant for only approximately ninety seconds when he was robbed, the defendant was within two feet of the victim and the victim gave a detailed description of the defendant's appearance. On the basis of these facts, and particularly the short period of time between the perpetration of the crime and the identification, we find that the on-the-scene identification was not so impermissibly suggestive as to taint that identification nor the subsequent in-court identification. The trial judge did not err in denying the defendant's motion to suppress nor in permitting the victim and the police officers to testify as to the identification.

ASSIGNMENT OF ERROR NO. 6
Kitty Wendt, the defendant's girl friend and an alibi witness for the defense, was being cross-examined by the prosecutor when the following exchange took place:
"Q How long have you and Robert Collins been living together?
"A Three months.
"Q And have you ever been over to Marshall, Texas?
"A Yes sir, I have.
"Q Arrested over there?
"A Yes sir.
"Q For what?
"A Burglary.
"MR. BURCHETT: Objection. I ask that the jury be retired.
"THE COURT: All right, Mr. Sheriff, will you retire the jury?
"(JURY RETIRED FROM THE COURROOM)
"MR. BURCHETT: On the basis of the question, I move for a mistrial, in light of the question that was asked, it tends to show arrest and I cite as my authority, State versus Gaspard, [La.] 301 Southern Second, 344. I'd be happy to go get the book."
Following a recess and the return of the jury, the trial judge made the following statement to the jurors:
"THE COURT: Ladies and gentlemen of the jury, immediately prior to the Court having you retired, the District Attorney had asked Mrs. Wendt a question that she had answered and the attorney for the defendant had moved for a mistrial. I'm going to deny the motion for the mistrial and I'm going to admonish you to ignore and erase from your mind the last question that was asked and the response by Mrs. Wendt to that question.
"MR. BURCHETT: I respectfully reserve a bill to the Court's ruling with reference to mistrial."
As the testimony reveals, defense counsel did not object to the question until after the witness had answered it. After the recess, the trial judge sustained the objection and admonished the jurors to disregard the previous *594 question and answer. However, the trial judge refused to order a mistrial.
The attempt by the prosecutor to impeach the credibility of this witness by questioning her as to past arrests was clearly improper. R.S. 15:495. However, reference to a prior arrest of a witness (not the defendant) is not a ground for mandatory mistrial under C.Cr.P. 770.[1] Rather, this question and answer fall within the purview of C.Cr.P. 771, which provides:
"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
"(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
"(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
"In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."
Here, the trial judge not only sustained the defendant's objection but admonished the jurors to disregard the offensive question and answer. The reference here was to a prior arrest of the witness and not the defendant. Although a violation of R.S. 15:495 might clearly be grounds for reversal, here the admonition of the trial judge was sufficient to cure any undue prejudice that the defendant might have suffered as a result of the improper questioning by the district attorney, and we find no abuse of the trial judge's discretion in refusing to declare a mistrial.
After appellate briefs were filed in this case, but prior to oral argument before this court, the defendant secured different retained counsel. Defendant's new attorney filed with this court a pleading styled "Motion to Remand." In that motion the defendant seeks to raise the issue of the lack of effective assistance of counsel at his trial. Since no specifications of error were filed in this regard, the defendant wishes to have the case remanded to the district court for a hearing on the ineffective assistance claim. The defendant seeks to have this issue decided prior to a determination of his appeal by this court.
Based on the record before us now, we are unable to determine the merits of the defendant's allegations as to effective assistance. The claim of ineffective assistance is more properly raised by an application for a writ of habeas corpus in the district court. In this manner the district court judge may order a full evidentiary hearing on the matter. State v. Ross, 343 So.2d 722 (La.1977); State v. Mouton, 327 So.2d 413 (La.1976); State v. Marcell, 320 So.2d 195 (La.1975). Therefore, at this time we decline to rule on the issue of effective assistance of counsel and deny the defendant's motion to remand.
*595 Accordingly, since we find no error in the record before us now, the conviction and sentence of the defendant are affirmed.
NOTES
[1] C.Cr.P. 770 provides:

"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
"(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
"(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
"(3) The failure of the defendant to testify in his own defense; or
"(4) The refusal of the judge to direct a verdict.
"An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial."