778 So.2d 569 (2001)
STATE of Louisiana
v.
Sidney COTTON.
No. 2000-KK-0850.
Supreme Court of Louisiana.
January 29, 2001.
*570 Richard P. Ieyoub, Attorney General, Walter P. Reed, District Attorney, Millard *571 J. Gatewood, Assistant District Attorney, Counsel for Applicant.
Public Defender Board, John R. Simmons, Kevin Dotson Linder, Counsel for Respondent.
KIMBALL, J.
In this prosecution for molestation of a juvenile and oral sexual battery, the State seeks to introduce evidence of the defendant's prior acquittals in an earlier prosecution involving different alleged victims. Following an evidentiary hearing, the trial court denied the State's motion to introduce the evidence of the prior acquittals. The first circuit denied the State's application for writs. State v. Cotton, 99-1684 (La.App. 1 Cir. 2/25/00). We granted writs to address, as a matter of first impression, the admissibility of a defendant's prior acquittals as other crimes evidence in a subsequent criminal trial. State v. Cotton, 00-850 (La.6/23/00), 765 So.2d 345. We now find that, while double jeopardy does not bar the use of the prior acquittals as other crimes evidence under LA.CODE EVID. art. 404(B), the record in this case contains no indication of the probative value of the evidence sought to be introduced. The State has therefore not satisfied its burden of proof under Article 404(B), and we cannot say that the trial court abused its discretion in refusing to admit the other crimes evidence. The judgment of the trial court is therefore affirmed.

FACTUAL AND PROCEDURAL BACKGROUND
On December 1, 1995, defendant, Sidney Cotton, was charged by bill information with violations of LA. R.S. 14:81.2, molestation of a juvenile,[1] and LA. R.S. 14:43.3, oral sexual battery.[2] The bill of information asserts that the offenses were committed between January 1, 1995 and June 1, 1995, when the alleged victim was seven years old.
Prior to the filing of charges in the current proceeding, Cotton had been charged with performing oral sex upon his son and his niece, both juveniles, in 1992. Following a trial in the Twenty Second Judicial District, Parish of St. Tammany, Cotton was acquitted of these charges. See Docket No. 221, 431.
On October 29, 1996, the State filed notice of its intent to introduce in the current case evidence of Cotton's prior acquittals. The State offered this evidence "for the purposes of showing absence of mistake, preparation, and intent on part of and identity of the defendant as detailed in Louisiana Code of Evidence Article 404 B and jurisprudentialy [sic] as detailed in State v. Prieur and its progeny."
In its brief to the trial court, the State argued that the mere fact that Cotton had been acquitted did not preclude the admission of evidence relating to those charges, citing, inter alia, Dowling v. United States, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). While the State's *572 memorandum reveals little of the facts underlying the instant charges, the State also urged that the current charges related to conduct similar to that at issue in Cotton's prior trial and that the probative value of this evidence outweighed its prejudicial effect. In his opposition, defendant argued that Dowling, which dealt with federal law, was inapposite due to the broader double jeopardy protections provided by the Louisiana Constitution.
At a hearing on February 24, 1997, the trial court denied the State's request to introduce the prior acquittals. In reaching its decision, the trial court relied primarily on our decision in State v. Miller, 571 So.2d 603 (La.1990). Particularly, the trial court focused on our statement recognizing "the particular significance the law attaches to an acquittal." Miller, 571 So.2d at 609 (citing United States v. DiFrancesco, 449 U.S. 117, 129, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980)).
The State then applied for writs to the first circuit; that court granted the State's application. State v. Cotton, 97-0632 (La. App. 1 Cir. 11/07/97), 703 So.2d 114. The court of appeal found that Dowling did not preclude the admission of prior bad acts evidence simply because the defendant had been acquitted of those acts. The court also distinguished Miller on the grounds that that case, unlike the instant matter, involved two prosecutions arising out of the same operative facts. The court of appeal remanded the case to the trial court, ordering it to conduct an evidentiary hearing on Cotton's prior acquittals to determine whether the probative value of such evidence was outweighed by its prejudicial effect. Id. at 117.
The trial court held the evidentiary hearing on July 31, 1998. At that hearing, the State offered into evidence transcripts of the trial testimony of the alleged victims in Cotton's prior trial, as well as transcripts of recorded statements given by those witnesses to the police. The State offered to stipulate that, were the two victims called to testify against defendant in the current proceedings, they would testify in conformity with their prior trial testimony and recorded statements. The defendant, while not agreeing that such testimony would be truthful or accurate, accepted the State's stipulation.
Following that hearing, the trial court again denied the State's motion to introduce the prior acquittals, finding as follows:
After close examination of the two statements of the alleged victims of the defendant's prior bad acts, and considering that this evidence may well parallel the evidence to be presented in the prosecution of the instant case, The Court finds that the prior testimony is highly prejudicial and inflammatory.
Following the evidentiary hearing, the State again applied for writs to the court of appeal. The first circuit denied the State's application for writs "on the showing made," stating as follows:
It is possible the district court had other evidence or information concerning the facts of the instant offense, possibly including testimony from an earlier hearing, from which it could determine if the other crimes evidence actually serves the purpose for which it is offered and from which it could balance the probative value of the other crimes evidence with the danger of unfair prejudice. However, such evidence is not before this court. At the evidentiary hearing, the state failed to present any evidence regarding possible similarities or a relationship between the instant offenses and the other crimes evidence, and the state did not include in this writ application any relevant portions of the record (containing the facts of the instant offense) which the district court might have considered when it issued its ruling.
We granted writs, State v. Cotton, 00-850 (La.6/23/00), 765 So.2d 345, to address, as a matter of first impression, the admissibility in a subsequent criminal trial of a *573 defendant's prior acquittals as other crimes evidence under LA.CODE EVID. art. 404(B).

DISCUSSION
The State argues that the acquittals should be admissible as other crimes evidence since an acquittal does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof under Dowling v. United States, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). Furthermore, the State argues that the trial court was wrong to conclude that the prejudicial effect of the prior acquittal evidence outweighed the probative value of that evidence. In response, defendant argues that introduction of the other crimes evidence would force him to relitigate charges of which he has previously been acquitted, thereby raising double jeopardy concerns. Additionally, defendant argues the State has not satisfied the requirements of LA.CODE EVID. art. 404(B) for the introduction of evidence of other crimes and, even if it could, the probative value of that evidence would be substantially outweighed by the danger of unfair prejudice.
Both the United States and the Louisiana Constitutions provide that no person shall twice be put in jeopardy of life or liberty for the same offense. U.S. CONST. amend. V; LA. CONST. ART. 1, § 15. In interpreting the Double Jeopardy Clause of the Fifth Amendment, the federal courts employ the test enunciated in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932):
The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.
The Louisiana rule is set out in LA.CODE CRIM.P. art. 596, which provides:
Double jeopardy exists in a second trial only when the charge in that trial is:
(1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial.
In evaluating claims of double jeopardy under article 596 and LA. CONST. art. 1, § 15, Louisiana courts have used the "same evidence" test, which we have remarked is "somewhat broader in concept than Blockburger." State v. Steele, 387 So.2d 1175, 1177 (1980). The same evidence test has been stated as follows:
If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial.
Id.
In the instant case, there is no claim that the crimes charged in the first trial are in any sense the "same offense" as those charged for purposes of the second trial. The concept of double jeopardy, then, in its strictest sense, would not be offended by the admission of evidence relating to the prior bad acts of which defendant was acquitted in a previous trial.
The Double Jeopardy Clause of the Fifth Amendment, however, also incorporates the doctrine of collateral estoppel. This component of the Double Jeopardy Clause was recognized by the United States Supreme Court in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). There, defendant was accused of being part of a group of masked men who *574 robbed six men playing poker. The defendant was subsequently tried for the armed robbery of one of the card players, Donald Knight, and was acquitted after a jury trial. The state then brought petitioner to trial six weeks later, over his objections, for the armed robbery of another of the poker players who was robbed that night. Defendant was convicted at the conclusion of this second trial.
The Supreme Court, applying the doctrine of collateral estoppel it found implicit in the Double Jeopardy Clause, reversed defendant's conviction and held the acquittal in defendant's first trial precluded the state from charging him for the second offense. The Court stated that collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Id. at 443, 90 S.Ct. at 1194. The Court also noted that, in criminal cases, the rule of collateral estoppel
is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."
Id. at 444, 90 S.Ct. at 1194 (internal citations omitted). The Court concluded that defendant could not be prosecuted a second time because, to convict defendant, the second jury would have to reach a conclusion directly contrary to that reached by the first jury.
This court has recognized Ashe's principle that collateral estoppel "is anchored in the Fifth Amendment guarantee against double jeopardy. In Louisiana, the application of the doctrine has been limited `to those cases where it is required by Ashe v. Swenson ...'" State v. Blache, 480 So.2d 304, 306 (La.1985), citing State v. Knowles, 392 So.2d 651, 655 (La.1981); State v. Doucet, 359 So.2d 1239, 1248 (La. 1978). Thus, while the Louisiana protection against double jeopardy is broader than its federal counterpart, we apply the federal test of Ashe where collateral estoppel is concerned.
Later, in Dowling v. United States, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), the U.S. Supreme Court addressed the collateral estoppel doctrine first recognized in Ashe as it relates to the admission of prior bad acts evidence. The Court there refused to extend Ashe and the collateral estoppel component of the Double Jeopardy Clause to exclude in all circumstances relevant and probative evidence that is otherwise admissible under the evidence rules simply because it relates to alleged criminal conduct for which a defendant has been acquitted. A review of the facts and reasoning of Dowling is thus important.
In Dowling, defendant was accused of the armed robbery of a bank. In its effort to prove defendant's identity as the gunman, the government sought to introduce evidence from defendant's prior trial for the attempted robbery of the home of Vena Henry, which ended in defendant's acquittal. Henry testified that defendant had attempted to rob her while wearing a mask and carrying a gun similar to those used in the bank robbery and that she had unmasked defendant during the attempt. The government offered Henry's testimony to establish the identity of defendant as the man who had worn the mask and carried the gun in the bank robbery. Defendant was subsequently convicted of the bank robbery and, on appeal, complained of a double jeopardy violation. The Supreme Court affirmed defendant's conviction, finding the doctrine of collateral estoppel inapposite in that case.
*575 The Court stated that, under the collateral estoppel doctrine, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Id. at 445-46, 90 S.Ct. at 1195. Ashe was distinguished, however, since the defendant's acquittal of the Henry robbery did not determine an ultimate issue in the bank robbery prosecution. The Court held that the jury in the bank robbery trial could reasonably have concluded that the defendant "was the masked man who entered Henry's home, even if it did not believe beyond a reasonable doubt that [defendant] committed the crimes charged at the first trial[.]" Dowling, 493 U.S. at 348-49, 110 S.Ct. at 672.
The Court noted that the result it reached was consistent with earlier cases holding that "an acquittal in a criminal case does not preclude the government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof." Id., citing United States v. One Assortment of 89 Firearms, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984) (allowing in rem proceeding against firearms even though gun owner had been acquitted of charge of dealing guns without a license); One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) (similar facts, noting that the difference in burden of proof between criminal and civil cases precludes application of the collateral estoppel doctrine). These cases were applicable here given that the government needed only to show sufficient evidence for the jury to conclude that defendant had been the man in Henry's house, not establish his guilt beyond a reasonable doubt.
In considering whether to admit the evidence of Cotton's prior acquittals in the instant case, the trial court initially focused not on the rule announced in Dowling but rather on this court's earlier exclusion of prior acquittal evidence in State v. Miller, 571 So.2d 603 (La.1990). Our decision in Miller, however, as correctly pointed out by the court of appeal, is distinguishable from the instant case.
In Miller, the defendant was accused of nabbing a twelve-year-old boy and taking him to an abandoned house where he attempted to rape the boy. Defendant was tried for attempted aggravated rape and acquitted by the jury. The State then charged defendant with simple kidnapping. The trial court permitted testimony about the attempted rape without giving any limiting instruction to the jury. Id. at 604. Defendant appealed, and the court of appeal reversed his conviction "on the ground that the due process guarantee of fundamental fairness was violated by introduction of the evidence relating to the alleged rape attempt." Id.
This court affirmed the reversal of the conviction. The court began by looking at the relevant language of the simple kidnapping statute, LA. R.S. 14:45(A), which provides that simple kidnapping is:
(1) The intentional and forcible seizing and carrying of any person from one place to another without his consent; or
(2) The intentional taking, enticing or decoying away, for an unlawful purpose, of any child not his own and under the age of 14 years, without the consent of its parent or the person charged with its custody[.]
When the defense asked the prosecution to specify under which subsections of the statute it was prosecuting the defendant, the State responded that it was proceeding under the two subsections listed above.
The defendant argued that the use of the prior acquitted conduct (the attempted rape charge) to satisfy the "unlawful purpose" element of LA. R.S. 14:45(A)(2) violated his double jeopardy rights, and this court agreed. Our opinion recognized that there are two tests available for evaluating whether a second prosecution violates double jeopardy: the Blockburger test and the "same evidence" test. The court concluded *576 that prosecuting defendant under LA. R.S. 14:45(A)(1) did not violate defendant's double jeopardy rights under either the Blockburger test or the same evidence test. Id. at 606.
However, the court noted that prosecution under LA. R.S. 14:45(A)(2) was more problematic since the State relied on the same testimony concerning the attempted rape charge to fulfill the "unlawful purpose" requirement of the statute. The court acknowledged the existence of collateral estoppel within the double jeopardy safeguards. The court determined that, in this context, the defendant's acquittal of attempted rape had determined an "ultimate issue of fact" in the simple kidnapping trial:
A fact is considered "ultimate" if it is necessary to a determination of the defendant's criminal liability ... [T]he record of defendant's simple kidnapping trial indicates the state relied heavily on the testimony of the attempted rape. In fact, the record strongly suggests the state was relying on the existence of the attempted aggravated rape as the sole basis for satisfying the "unlawful purpose" element of R.S. 14:45(A)(2). In this trial, therefore, the existence of an attempted aggravated rape was an issue of ultimate fact, one which was previously decided in defendant's favor. Consequently, the state's reliance on the alleged attempted rape violated the principle of collateral estoppel.
Id. at 608.
This court concluded that it was unclear whether the defendant's simple kidnapping conviction was based on LA.R.S. 14:45(A)(1) or (A)(2). We held that, "[b]y introducing [the attempted rape] evidence to fulfill its burden of proving an `unlawful purpose,' the State forced defendant to `run the gauntlet' again for a crime of which he was acquitted." Id. We further concluded that double jeopardy had been violated and remanded for a new trial under subsection (A)(1) only. In a footnote, we acknowledged Dowling, but distinguished that case from Miller on the facts:
The Court of Appeal recognized the "same evidence" test is traditionally used by this Court to analyze double jeopardy issues, but did not apply the test to the facts. Instead, the Court of Appeal relied on the recent U.S. Supreme Court opinion in Dowling [ ], for the proposition "that evidence of a crime of which the defendant has previously been acquitted may be introduced in the trial of that defendant on a second charge when it does not determine an ultimate issue in the second trial without violating the constitutional protection against double jeopardy." As discussed more fully in the body of this opinion, infra, the existence of an attempted rape was an ultimate issue in the simple kidnapping trial.

571 So.2d at 607, fn. 1 (emphasis added). Our exclusion of the prior acquittal evidence in Miller, then, hinged on a fact not present in Dowling: In Miller, whether the defendant was guilty of attempted rape (the offense for which he had already been acquitted) was an ultimate issue in the second prosecution.
Thus, while Miller and the instant case both involve the admissibility of a prior acquittal, Miller is simply inapposite here. In Miller, whether the defendant had committed the aggravated rape was an "ultimate issue" in the simple kidnapping trial, i.e., an issue to be proved beyond a reasonable doubt. The State in Miller was attempting to prove beyond a reasonable doubt that the defendant had committed aggravated rape after defendant had already been acquitted of that offense. In the instant case, on the other hand, whether the defendant committed the prior alleged offenses is not an "ultimate issue" that the State is required to prove beyond a reasonable doubt. The State here is not attempting to "relabel [ ] the offense to charge defendant a second time with the same criminal conduct." Steele, 387 So.2d at 1178. Rather, the State is seeking to *577 offer the prior acquittal evidence to establish the existence of a "plan" or "motive" under article 404(B), which does not, of course, constitute an "ultimate issue" in the instant case.
As the U.S. Supreme Court has explained, an offer of evidence of a defendant's prior bad acts for 404(B) purposes does not constitute an attempt to prosecute the defendant for those prior bad acts. In United States v. Felix, 503 U.S. 378, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992), the U.S. Supreme Court further explained the rule of Dowling and its operation in the 404(B) context. There, defendant committed federal drug offenses in both Oklahoma and Missouri. He was first tried and convicted in federal court in Missouri for attempting to manufacture an illegal narcotic; some evidence of the Oklahoma offenses was introduced in the Missouri trial. He was then tried and convicted in federal court in Oklahoma for conspiracy and substantive offenses related to his drug activities in that state. In holding that Felix's double jeopardy rights had not been violated, the Court explained its holding in Dowling:
The primary ruling of Dowling was our conclusion that the collateral-estoppel component of the Double Jeopardy Clause offered Dowling no protection despite his earlier acquittal, because the relevance of evidence offered under Rule 404(b) was governed by a lower standard of proof than that required for a conviction. But it is clear that we would not have had to reach the collateral-estoppel question if the mere introduction, pursuant to Rule 404(b), of evidence concerning the Henry robbery constituted a second prosecution of that crime for purposes of the Double Jeopardy Clause. Underlying our approval of the [prior acquittal] evidence in Dowling is an endorsement of the basic, yet important, principle that the introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct.

Id. at 386-87, 112 S.Ct. at 1383 (emphasis added). The Felix Court made clear that the introduction of evidence of relevant prior bad acts under article 404(B) does not amount to a prosecution for those acts. It is for this reason that the double jeopardy protection does not apply when the State seeks to introduce acquittal evidence as other crimes evidence under article 404(B).
Similarly, the distinction between Ashe and Dowling was explained in Charles v. Hickman, 228 F.3d 981 (9th Cir.2000), as follows:

Dowling did not alter Ashe so much as it introduced a new perspective on the meaning of the "ultimate fact" decided in the first trial. Instead of meaning that certain acts did not happen, an acquittal means that they were not proved beyond a reasonable doubt. If an act that could have been proved to a lesser degree than that required for conviction is for some reason probative in a subsequent trial, it need not be excluded because of the prior acquital.
Id. at 986 (quoting United States v. Seley, 957 F.2d 717, 723 (9th Cir.1992)). The Fifth Circuit Court of Appeals has stated the "rule" of Dowling as follows:
In the aftermath of Dowling, collateral estoppel bars the introduction of evidence in a subsequent proceeding only if the facts "necessarily determined" in the first trial were determined under the same burden of proof applicable in the subsequent trial.... A general verdict of acquittal "necessarily determines" only that the evidence was insufficient to prove each element of the offense beyond a reasonable doubt; therefore, collateral estoppel bars relitigation only of facts that must be proven beyond a reasonable doubt.
United States v. Brackett, 113 F.3d 1396, 1401, n. 9 (5th Cir.1997).
We agree with these characterizations of Dowling's holding. Thus, under Dowling, the fact of a prior acquittal does not automatically *578 prevent the State from introducing in a subsequent trial, under LA.CODE EVID. art. 404(B), evidence of a defendant's prior acts for which he was acquitted if the required standard of proof of the prior act is less than that required for conviction. In the instant case, the State's burden to prove defendant's prior bad acts under LA.CODE EVID. art. 404(B) is obviously lower than the State's burden of beyond a reasonable doubt required to convict a defendant; therefore, the constitutional protections against double jeopardy do not preclude the admission of evidence relating to the prior crimes of which defendant has been acquitted.[3]
The fact that the evidence the State seeks to introduce is not barred by the Double Jeopardy Clause or the collateral estoppel component of that Clause, however, does not finally resolve the issue of the admissibility of the evidence. As always, when the State seeks to introduce other crimes evidence under LA.CODE EVID. art. 404(B), it must satisfy the requirements of State v. Prieur, 277 So.2d 126 (1973), and the balancing test set forth in LA.CODE EVID. art. 403.
As a general matter, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." LA.CODE EVID. art. 404(B). However, such evidence may be admissible to prove "motive, opportunity, intent, plan, knowledge, identity [or] absence of mistake or accident." Id. The inquiry, however, does not end with the determination that the other bad acts evidence is admissible for one of the article 404(B) purposes. For, "even if independently relevant, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." State v. Miller, 98-0301 (La.9/9/98), 718 So.2d 960, 962; LA.CODE EVID. art. 403.
The first step for the State, then, is to establish at a Prieur hearing the admissibility of any prior bad acts evidence. This court succinctly explained the requirements of Prieur in Miller:
[T]he state must, within a reasonable time before trial, provide written notice of its intent to use other acts or crimes evidence and describe these acts in sufficient detail. The state must show the evidence is neither repetitive nor cumulative, and it is not being introduced to show the defendant is of bad character. Further, the court must, at the request of the defendant, offer a limiting instruction to the jury at the time the evidence is introduced. The court must also charge the jury at the close of the trial that the other crimes evidence serves a limited purpose and that the defendant cannot be convicted for any crime other than the one charged or any offense responsive to it.
Id.
Here, the State asserted it was offering the evidence of prior acquitted conduct "for the purposes of showing absence of mistake, preparation, and intent on part of and identity of the defendant as detailed in Louisiana Code of Evidence Article 404 B and jurisprudentialy [sic] as detailed in State v. Prieur and its progeny." However, *579 there is no evidence in the record on which to evaluate whether the evidence of Cotton's prior acquittals tends to prove any of the 404(B) factors for which the State offers the evidence, i.e., whether the evidence has any probative value.
At the Prieur hearing, the State offered transcripts of testimony detailing the charges alleged against Cotton at his first trial. However, the record contains no such detailed evidence regarding the present charges, making it impossible to determine whether the past and present allegations are sufficiently similar to make the past allegations relevant in the current proceedings. The State asserts in the bill of information that the offenses were committed between January 1, 1995 and June 1, 1995, when the victim was seven years old. Also, the State alleges in its writ application that, at the time the offenses were committed, defendant was a tenant on property owned by the victim's parents, and that the alleged conduct occurred in the defendant's home. These slim facts in the record before us are insufficient to establish the admissibility for 404(B) purposes of the prior acquittal evidence in this case. The State has made no showing that the defendant's prior conduct is in any way similar to the conduct on which the current charges are based.
The State has now had two opportunities to make the required showing for the admissibility of other crimes evidence and the record remains devoid of any evidence establishing sufficient similarity between the charged offenses and the prior acquitted conduct. We therefore must find the State has not satisfied its burden of proof under Article 404(B). Accordingly, we cannot say that the trial court abused its discretion in refusing to admit the prior bad acts evidence. Because the State has failed to satisfy its burden of proof under LA.CODE EVID. art. 404(B), the ruling of the trial court is affirmed.
CALOGERO, C.J., concurs and assigns reasons.
VICTORY, J., dissents and assigns reasons.
TRAYLOR, J., dissents for reasons assigned by Justice VICTORY.
CALOGERO, Chief Justice, Concurring.
I concur in the majority's upholding the lower courts' rulings denying the State's Prieur motion. The State had two opportunities, yet failed to introduce sufficient evidence of whether the defendant's prior acquittals tend to prove any of the 404(B) factors for which the evidence is offered, i.e., whether the evidence has any probative value.
VICTORY, J., Dissenting.
I agree with the majority opinion on the Dowling issue, yet point out that it is unnecessary to discuss that issue due to the majority's ruling that the other crimes evidence in dispute is inadmissible for failure of proof by the state.
However, I disagree with the majority's determination that the state failed to meet the burden of proof under Prieur for the following reasons:
(1) The state argued the similarity of the prior charged offenses to the trial judge, and the defendant never objected to their admissibility of the grounds that the prior offenses were not sufficiently similar to the current charges to justify admissibility. Defendant's objection was only that the other crimes evidence should not be allowed because defendant was acquitted. In fact, in his Memorandum of Opposition to the state's Prieur motion, defendant argued that it "would be highly prejudicial if the state were allowed to introduce evidence of other similar crimes for which he was acquitted." (Emphasis added.) The trial court noted that the other crimes evidence "may well parallel the evidence to be presented in the prosecution of the instant *580 case," but ruled the other crimes evidence inadmissible because it was "prejudicial and inflammatory," not because it was dissimilar. Thus, the majority has determined the outcome of admissibility based on an issue never advanced by the defendant in the trial court.
(2) Further, the prior charged offenses and the current crimes charged are similar. As the majority notes, defendant was charged with performing oral sex on his son and niece, both juveniles, in 1992. His current charges are molesting a juvenile and oral sexual battery on a juvenile, age seven, early in 1995.
(3) The state's Prieur motion claims that the other crimes evidence is admissible to show intent. One of the crimes with which defendant is currently charged is molestation of a juvenile, a specific intent crime. In State v. Miller, 98-0301 (La.9/9/98), 718 So.2d 960, this court ruled that other crimes evidence is admissible in a case such as this to show lustful disposition toward minors in specific intent crimes.
I would reverse the ruling of the trial court and rule, as does the majority, that the other crimes evidence is not inadmissible merely because the defendant was acquitted. However, unlike the majority, I would allow the state to present the evidence at trial.
Accordingly, I respectfully dissent.
NOTES
[1] LA. R.S. 14:81.2(A) provides as follows:

Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.
[2] LA. R.S. 14:43.3(A) provides as follows:

Oral sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender, when the offender either compels the other person to submit by placing the person in fear of bodily harm, or when the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender; or
(2) The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.
[3] Article 1104 of the Louisiana Code of Evidence was added by Section 2 of Act 51 of the Third Extraordinary Session of 1994 to provide that "[t]he burden of proof in a pretrial hearing held in accordance with State v. Prieur, 277 So.2d 126 (La.1973), shall be identical to the burden of proof required by Federal Rules of Evidence Article IV, Rule 404." This Court has not yet addressed the extent to what extent Article 1104 and the burden of proof required by the federal rules, as interpreted in Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), has affected the burden of proof required for the admissibility of other crimes evidence. Because the burden of proof, whether it be preponderance of the evidence or clear and convincing, is in any event lower than the "beyond a reasonable doubt" standard required in criminal trials, we need not address the issue here.