MAX N. TOBIAS, JR., Judge.
hThe defendant, Alvin Brumfield, appeals his conviction for the crime of theft. For the reasons that follow, we reverse his conviction.

I. Preface

As a preface to our discussion of this case, we note the incompleteness of the record on appeal coming to us from the Criminal District Court for the Parish of Orleans, bearing docket number 499-731C. Because we were unable to ascertain precisely and accurately what had occurred in the trial court below, we requested of the clerk of the trial court all records, such as they existed, from the prior case in which the defendant had been charged with the same offense (number 497-156C on the docket of the Criminal District Court), all as discussed infra. The earlier case had been dismissed on a motion to quash. The record in number 497-156C was not a part of the record on appeal in this case and we do not find that that record may be properly used to decide the merits of the current appeal.
Further, because the record on appeal did not contain some of the exhibits 12introduced by the state at a hearing on motions held on 19 January 2011, we ordered on 24 September 2012 that the state supplement the record with the exhibits that were introduced on that day. The state, however, was unable to locate the original exhibits but furnished this court with certain documents which do not denote exhibit numbers referenced in the hearing of 19 January 2011. (These documents are referred to herein as “supplemental unnumbered exhibits.”) We cannot be certain that the supplemental unnumbered exhibits are identical to those introduced on 19 January 2011. We assume for purposes of this appeal that they are identical because they ultimately do not affect the result we reach. The documents were not introduced into evidence in any form at the 16 February 2011 hearing on the motion to quash. All of this is addressed infra.
With that said, we proceed to describe the history and relevant facts relating to this case.
II. History of the Two Proceedings
Initially, on 27 May 2010 in case number 497-156C, Alvin Brumfield (“Brumfield”), was charged by a bill of information with one count of theft of U.S. currency in an amount of $500 or more from Leona Taylor (“Taylor”) and/or Arona Walker (‘Walker”), a violation of La. R.S. 14:67.[1] The bill of information alleged 17 February 2006 as the date of the offense. Brumfield filed a motion to quash, raising the four-year prescriptive period set forth in La.C.Cr.P. art. 572 A(2). His motion to quash was granted on that ground.
| «On 24 August 2010, Brumfield was charged by a new bill of information for the same theft in the amount of $500 or more from Taylor and/or Walker; however, this time, the bill alleged that the theft occurred on 26 October 2006. He was arraigned on 27 September 2010 and a motions hearing was held on 19 January 2011; however, a motion to quash neither had been filed prior to 19 January 2011 *704 nor heard on that date. At the hearing, the trial court found no probable cause for the arrest or to hold Brumfield on the theft charge; trial was set for 22 February 2011.
On 16 February 2011, Brumfield filed a motion to quash in this case. Although the state argues in its brief that no hearing on the motion to quash was held, a transcript in the record on appeal indicates that a hearing was in fact held on 16 February 2011; we note neither the docket master nor minute entries in the record contain a specific notation that the motion was heard. (It appears that the trial of the motion to quash was held instanter, for as counsel for the state said on the record, “And, Judge, I can respond without needing my file here, Judge.”) The state offered no evidence at this hearing, and did not formally seek to make any evidence or testimony from any former hearing (in either case number 497-156C or 499-731C) a part of the record. At the conclusion of that hearing, the following colloquy appears:
BY THE COURT
Motion denied, Mr. Roche [counsel for Brumfield].
When is the trial set?
BY MR. COLLINS [counsellor the state]:
Next week. Is that right?
BY THE COURT:'
Motion denied. We’ll note your objection, Mr. Roche.
The 22 February 2011 trial date was continued to 5 April 2011, and again to 25 May 2011. On 25 May 2011, Brumfield pleaded guilty pursuant |4to State v. Crosby, 338 So.2d 584 (La.1976), and reserved his right to appeal the denial of his motion to quash.[2] In accordance with the recommendation of the state, the trial court sentenced Brumfield to five years at hard labor, suspended, and placed him on five years of inactive probation, with credit for time served; additionally, Brumfield was to make restitution to the complainants of $7,500 and upon completion of the restitution, he would be allowed to amend the charge to a misdemeanor.
III. The Underlying Facts
On 17 February 2006, Brumfield entered into a contract with Taylor and Walker to complete various repairs and construction on their Hurricane Katrina damaged house located at 3407 Milan Street in New Orleans (hereinafter, “the premises”). It is asserted that Brumfield was initially given $10,500 for removal and installation of doors, cabinets, appliances, and windows, and an additional $10,000 for repairs to the roof. The record, however, reflects only four checks dated 4 January, 11 January, 16 March, and 3 April 2006, totaling $19,000, were written by the complainants to Brumfield. Brumfield proceeded to purchase supplies and began to work on the house.[3]
*705 On 28 April 2006, Taylor and Walker received an estimate for work on the premises from Ja’Nel Contracting Company (“Ja’Nel”) after a site visit to the | ¡^premises. That estimate indicated that the premises needed at least $111,544 of repairs. The record does not clearly indicate whether the complainants had Ja’Nel perform any work. However, the supplemental unnumbered exhibits do indicate that others performed work on the premises subsequent to Brumfield’s ceasing work.
On 26 September 2006, Taylor and Walker sent a demand letter to Brumfield asking for a partial refund based upon incomplete work.[4] In pertinent part, the letter, sent by certified mail, states:
Please be advised by this communication that this is another attempt to collect the refund requested by Ms. Leona D. Taylor and Ms. Arona T. Walker for repairs that were to be done by your company at 3407 Milan Street, New Orleans, La. 70125, but you failed to do so....
Sir, we have requested a refund on several different occasions in which you stated you would mail to the above address, [sic] you have failed to do so....
Please contact us at the above address within five (5) working days in order that we may conclude this matter before further legal action is taken. [Emphasis supplied.]
The record does not reflect if, and when, earlier “attempts to collect the refund” or requests for a refund were made by a complainant to Brumfield.
IV. Errors Patent
The record reveals no errors patent.
V. Assigned Error and Discussion

A. Relevant Law

Lin his only assignment of error, Brum-field argues that the trial court erred by denying his motion to quash the bill of information filed in case number 499-731C.[5]
The 27 May 2010 bill of information in case number 497-156C charged Brumfield with the theft of over $500 from Taylor and/or Walker that occurred on 17 February 2006. In his motion to quash that bill, he asserted quashal was appropriate based only upon prescription under La.C.Cr.P. art. 532(7).
At the time of the alleged crime in 2006, the grounds for a motion to quash, set forth in La.C.Cr.P. art. 532, read as follows:
A motion to quash may be based on one or more of the following grounds:
(1) The indictment fails to charge an offense which is punishable under a valid statute.
(2) The indictment fails to conform to the requirements of Chapters 1 and 2 of Title XIII. In such case the court may *706 permit the district attorney to amend the indictment to correct the defect.
(3) The indictment is duplicitous or contains a misjoinder of defendants or offenses. In such ease the court may permit the district attorney to sever the indictment into separate counts or separate indictments.
(4) The district attorney failed to furnish a sufficient bill of particulars when ordered to do so by the court. In such case the court may overrule the motion if a sufficient bill of particulars is furnished within the delay fixed by the court.
(5) A bill of particulars has shown a ground for quashing the indictment under Article 485.
|7(6) Trial for the offense charged would constitute double jeopardy.
(7) The time limitation for the institution of prosecution or for the commencement of trial has expired.
(8) The court has no jurisdiction of the offense charged.
(9) The general venire or the petit jury venire was improperly drawn, selected, or constituted.
Here, Brumfield asserts four grounds: those set forth in subsections (1), (6), (7), and (8) of article 532.
In State v. Byrd, 96-2302, pp. 18-19 (La.3/13/98), 708 So.2d 401, 411, the Court defined a motion to quash:
A motion to quash is, essentially, a mechanism whereby pre-trial pleas are urged, i.e., pleas which do not go to the merits of the charge. At a hearing on such a motion, evidence is limited to procedural matters and the question of factual guilt or innocence is not before the court. La.C.Cr.P. art. 531 et. [sic] seq.; State v. Rembert, 312 So.2d 282 (La.1975); State v. Patterson, 301 So.2d 604 (La.1974).
In considering a motion to quash, a court must accept as true the facts contained in the bills of information and in the bill of particulars, and determine as a matter of law and from the face of the pleadings, whether a crime has been charged; while evidence may be adduced, such may not include a defense on the merits. State v. Gerstenberger, 260 La. 145, 255 So.2d 720 (1971); State v. Masino, 214 La. 744, 750, 38 So.2d 622 (1949) (“the fact that defendants may have a good defense is not sufficient grounds to quash the indictment”).
 When a defendant has brought a motion to quash based on prescription, the state bears a heavy burden to demonstrate either an interruption or a suspension of |sthe time limit has occurred. State v. Rome, 93-1221, p. 3 (La.1/14/94), 630 So.2d 1284, 1286. “An interruption of prescription occurs when the state is unable, through no fault of its own, to try a defendant within the period specified by statute.” Id. at p. 4, 630 So.2d at 1287. In the case at bar, the applicable period is four years.
In 2006, the relevant portion of La. R.S. 14:67, relative to theft, read:
A. Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
B. (1) Whoever commits the crime of theft when the misappropriation or taking amounts to a value of five hundred dollars or more shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not *707 more than three thousand dollars, or both.
[[Image here]]
C. When there has been a misappropriation or taking by a number of distinct acts of the offender, the aggregate of the amount of the misappropriations or taking shall determine the grade of the offense.
In his motion to quash the second bill, Brumfield argued that on 24 August 2010, the state’s second bill charged the same theft involving the same complainants, but the date of the theft was now stated as 26 October 2006. He argued that the trial court had already quashed the theft charge in case number 497-156C and, under the doctrine of res judicata, the issue of whether this charge had | prescribed had already been decided by the trial court. He noted that the complainants’ checks were dated 4 January, 11 January, 6 March 2006, and 3 April 2006, and that by 28 April 2006, the complainants were already seeking a second contractor. Further, Brumfield argued that on 27 May 2006, Taylor and Walker entered into a contract with Ja’Nel for “total renovation for roof work.”[6] He argued that the state now claimed that the theft occurred on 26 October 2006, but the complainants’ 26 September 2006 demand letter indicated that they had previously requested a refund from the defendant for work that he had failed to do. Brumfield asked “in the interest of justice” that the case be quashed.
In the defendant’s brief on appeal, he argues that the state filed a second bill of information relating to the same offense and simply changed the date of the offense so that the bill would be timely filed. He claims that the evidence does not support that the crime occurred in October 2006, listing several issues under La.C.Cr.P. art. 532: subsection (1), the indictment fails to charge an offense which is punishable under a valid statute; subsection (6), trial for the offense charged would constitute double jeopardy; subsection (7), the time limitation for the institution of prosecution or for the commencement of trial has expired; and subsection (8), the court has no jurisdiction for the offense charged. Brumfield argues that the trial court had already ruled on the prescription issue in the earlier case, and thus the issue was res judica-ta.[7] He claims that, if changing the date of the crime is not res \wjudicata and the second prosecution of the charge is not double jeopardy, the time for filing charges had nonetheless expired, and the *708 bill should be quashed. Further, Brum-field argues that the evidence presented at the hearing on the motions indicated that the contract was signed on 17 February 2006, and the first check for the work was given to him on that date. The last check to him was dated 3 April 2006, and the two complainants received a bid from another contractor on 28 April 2006. Brumfield asserts that by 3 April 2006 when he received another check, after he failed to do most of the work for which he had already been paid, the theft [by implication assuming a theft charge was proper and this matter was not only civil in nature] had occurred. Therefore, the 24 August 2010 bill of information was filed beyond the four-year time limitation.
In its brief, the state notes the prior case and the trial court’s decision to quash that bill of information for failure to file within four years of the crime. The state then filed a new bill of information declaring: “The new bill charges Brumfield with the same theft, but designates October 26, 2006 as the date of the commission of the offense.” The state explains that 26 October 2006 was thirty days after the complainants’ last demand letter, which indicated that Brumfield had agreed on previous occasions to refund the unearned portion of the amount the | n complainants had paid him.[8] The state asserts that 26 October 2006 is the date the theft was committed. Further, it argues neither the doctrine of res judicata nor that of double jeopardy applies.
The trial court’s ruling in 497-156C on the prescription issue is not res judicata; the issue can be litigated in this case, and the district court had jurisdiction to entertain the issue. This second prosecution does not constitute double jeopardy: the first case ended when the motion to quash was granted, the motion for reconsideration denied, and supervisory review sought. But because of the extraordinary factual scenario of this case, especially because of the state’s failure to introduce evidence at the 16 February 2011 hearing, collateral estoppel is applicable.
Brumfield’s time limitation argument requires serious consideration.
La.C.Cr.P. art. 572 provides in pertinent part:
A. Except as provided in Articles 571 and 571.1 [relating to charges without time limitations and limitations for certain sex offense], no person shall be prosecuted, tried, or punished for an offense not punishable by death or life imprisonment, unless the | ^prosecution *709 is instituted within the following periods of time after the offense has been committed:
[[Image here]]
(2) Four years, for a felony not necessarily punishable by imprisonment at hard labor.
La.C.Cr.P. art. 596 states:
Double jeopardy exists in a second trial only when the charge in that trial is:
(1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial.
In State v. Love, 00-3347, p. 12 (La.5/23/03), 847 So.2d 1198, 1208, the Court discussed the standard of review in such cases involving rulings on motions to quash:
When a trial judge exercises his discretion to deny a motion to quash, he presumably acts appropriately, based on his appreciation of the statutory and procedural rules giving him the right to run his court. When, as in this case, a trial judge denies a motion to quash, that decision should not be reversed in the absence of a clear abuse of the trial court’s discretion.
To support the argument that the issue of prescription could not be raised again, in his brief the defendant relies on the first paragraph of La.C.Cr.P. art. 577, which provides:
The issue that a prosecution was not timely instituted may be raised at any time, but only once, and shall be tried by the court alone. If raised during the trial, a hearing thereon may be deferred until the end of the trial.
| isThe state shall not be required to allege facts showing that the time limitation has not expired, but when the issue is raised, the state has the burden of proving the facts necessary to show that the prosecution was timely instituted. [Emphasis supplied.]
The focus is the time of the offense, the point in time when the misappropriation or taking occurred, or if La.C.Cr.P. art. 573 applies, the time that the fiduciary relationship between the defendant and the complainants terminated.
The state argues that La.C.Cr.P. art. 573(1), which provides an exception to the four-year prescriptive period, governs this case. Article 573 provides in pertinent part:
The time limitations established by Article 572 shall not commence to run as to the following offenses until the relationship or status involved has ceased to exist when:
(1) The offense charged is based on the misappropriation of any money or thing of value by one who, by virtue of his office, employment, or fiduciary relationship, has been entrusted therewith or has control thereof.
 We do not find that this article applies under the facts of this case. Brumfield is a contractor who entered into an agreement with the complainants to repair the premises after Hurricane Katrina, but did not complete the work. First, this relationship between the defendant and the complainants is not a fiduciary relationship, which terminated when Brumfield no longer worked for them as a contractor. We understand, in context, that a fiduciary relationship exists when a person, an individual, exercises any discretionary authority or discretionary control *710 with respect to the management of funds or assets. See, e.g., La. R.S. 11:264. Further, under article 573, the date that the statutory period starts to run is not the date that the money is tendered, but rather the date that a fiduciary relationship 114terminated. See State v. Comadore, 07-0976, pp. 4-5 (La.App. 4 Cir. 5/14/08), 984 So.2d 208, 205-06 (where the time limitation ran from the date that the defendant employee no longer worked for Greyhound, the company she allegedly defrauded by creating bogus tickets); Turner v. Department of Transp. and Development, 01-2426 (La.App. 1 Cir. 6/21/02), 822 So.2d 786 (where the time limitation for the theft statute began to run when the defendant employee, who made personal calls on her work phone, was terminated). See also State v. Aucoin, 457 So.2d 885, 886 (La.App. 3rd Cir. 1984) (where the state did not prove that the defendant, who was a maintenance clerk in a school district charged with theft, used his position to requisition light fixtures for his own use or that the exception in La.C.Cr.P. art. 573(1) applied in that case where the bill of information was filed seven years later). The relationships in these three cases are distinguishable from the relationship in the case before us.[9]
However, assuming arguendo, if the exception of La.C.Cr.P. art. 573 applies, the four-year time period started to run when the misappropriation or taking occurred. In State v. Langford, 483 So.2d 979, 983 (La.1986), the Court was faced with the defendant’s argument that the taking was consensual by the victim bank. The defendant opened a NOW (negotiable order of withdrawal) account and made a deposit. When the money was gone, he continued to write and cash checks and receive NSF notices due to the bank’s mistakes. In its discussion, the Court stated that the taking occurred after the NSF checks ($848,000) were honored and the money was in the defendant’s possession, ie., when defendant diverted or used the funds instead of returning them. Id. at 983. “A theft occurs 11fiwhen the thing is taken even though it may remain in the possession of the thief for only seconds.” State v. Victor, 368 So.2d 711, 712-13 (La.1979), quoting State v. Neal, 275 So.2d 765, 770 (La.1973). The essence of theft is that the thief must have acquired control of the property. Id. The factual issue of whether there is a “taking” for purposes of a theft concerns whether the defendant exerted control over the object adverse to the owner’s dominion. Id., 368 So.2d at 714.

B. The 19 January 2011 Hearing

Brumfield pleaded guilty in this case; therefore, the facts can be garnered only from the prior motion hearing and from the arguments of counsel at the hearing on the motion to quash.
At the 19 January 2011 hearing on the motions, not made a paH of the separately pled and entertained hearing on the motion to quash, the state called Detective Shannon Carr, a detective with the District Attorney’s Office. The state asked: “Could you tell us what [it] was the victim reported to you about this case? What is it you were investigating on that day?” Detective Carr testified that Taylor reported theft or contractor fraud committed by the defendant. Taylor told the officer that she had contracted with the defendant for repairs to her house at 3407 Milan Street, but he did not finish the work. She provided the cancelled checks and a 26 *711 September 2006 demand letter, signed by both Taylor and Walker, in which the complainants stated that they had previously requested a refund on several different occasions. However, the record before us contains no evidence that the 26 September letter that was mailed on that day was delivered or received by Brumfield for the return receipt in the record is not signed by the defendant. Moreover, the letter in the record was returned to Taylor by the U.S. Postal Service unclaimed. The supplemental unnumbered exhibits indicate that something was 11fimailed to Brumfield on 24 October 2006 and received by him on 26 October 2006. The officer had no document indicating a completion date for the repair work. The photos in the contractor fraud packet (see the supplemental unnumbered exhibits) showed walls that had not been gutted, as well as cabinets and appliances that had not been removed. The officer acknowledged that the last check issued to the defendant was dated 3 April 2006.
On cross-examination, defense counsel produced the complainant fraud packet that contained a 28 April 2006 proposal by a second contractor, Ja’Nel. The detective did not know the date of the photos, but the complainant indicated that they were taken after Brumfield breached the contract by not completing the work. In the packet, Taylor indicated that Brumfield had replaced five exterior doors; gutted 30% of the sheetrock on the first floor of the house; removed one cabinet; removed a portion of the ceiling tiles; and installed part of a blue roof. However, he had not, per his contract, removed the rest of the cabinets or the appliances, had not gutted the rest of the first floor, and had not replaced the roof.
Defense counsel argued that this case involved a contract where some of the work had been done, but determination of what still needed to be done should have been brought in civil court because it was not a criminal matter. The state argued that Brumfield had not completed the work for which he had been paid by the complainants, specifically stating:
She paid $17,000. [sic] There’s some theft going on somewhere in that situation, Your Honor. And they’ve not denied that the $17,000 [sic] was not [sic] received by Mr. Brumfield. We don’t see the work done for that. Theft is done in more than one way, not just taking something [sic] belongs [sic] You come in a contract. You supposed to do something. You take money. You do not come back and finish the work. That’s not just poor workmanship, didn’t not [sic] finish |17all we had. Finished some of it [sic]. We take that money and we did not do the work that the money was paid for. So [sic] that is where we got the theft from.
When the court asked if the complainants had completed the work on the house, the state replied that they obtained an estimate, but could not finish the work on the premises. The court asked defense counsel why Brumfield did not go back and complete the work and counsel answered that, according to the contractor fraud packet, the complainants hired other contractors. The state denied that another contractor had been hired; they only obtained an estimate. The state claimed that the work had never been completed. The court asked why the complainants did not get the defendant to finish the work, and the state answered that they tried to get the defendant to come back and finish the job; they wrote letters to him. Defense counsel pointed out that in the contractor fraud packet, Taylor was asked if she had hired somebody else to complete the job, and she answered affirmatively. The court stated that it wanted to ascertain *712 whether the house had been repaired and that if the house had not been repaired, the parties might be able to reach a resolution. Defense counsel noted that he had asked Detective Carr how long the defendant had to complete the job, but she did not know. The state noted that Brumfield had drawn the contract. There was no indication that a civil suit had been filed. The trial court ruled: “Based upon the documents submitted and the fact that some work in this particular case was done, I’m going to find no probable cause based on [sic] civil in nature. I’m not suppressing any evidence. That may not be my final conclusion, though.”

C. The 16 February 2011 Hearing

No evidence was introduced at the 16 February 2011 hearing on the motion to quash. Defense counsel orally summarized the history of the case, arguing that | isthe state was attempting to get “two bites at the apple.” The trial court had quashed the bill in prior case number 497-156C because the bill was filed after the four-year period under La.C.Cr.P. art. 572 had expired. When the state filed a motion to reconsider that ruling, the court denied that motion. The state then filed a new bill of information for the same theft charge as to the same complainants, but changed the date of the crime to 26 October 2006 (instead of 17 February 2006, the date used by the state in the earlier theft case). Counsel claimed that the doctrine of res judicata should apply.
The state insisted that the trial court had granted the motion to quash in the prior case only because the bill of information was defective, but that the new bill corrected those defects. Counsel for the state said, “And [sic] it’s not like we?re playing fast and loose with the laws of prescription here, Judge.” The state urged the court to deny the motion to quash:
And [sic] even if you look at the documents Mr. Roche has attached to this particular Motion to Quash, you can see that there is a demand letter from the victim dated September 26 of 2006, Judge, in which she is demanding either her money back or the work to be completed. So this is an ongoing criminal act. It’s not an act that is solely determined at the time of the contract....
The criminal act begins when Mr. Brumfield fails to complete the work as promised. And [sic] then, the State would also argue that it continues up until and past September 26, 2006, when Ms. Arona (ph) Walker sends the demand letter to Mr. Brumfield demanding completion of the work or demanding her money back. So this isn’t a situation where the State is attempting to circumvent the laws of prescription. And [sic] if Your Honor remembers, when we filed the motion to reconsider, you had said, State, once the bell has been rung, you can’t unring it. If you’d brought this information to my attention prior to me granting the Motion to Quash, the story might have been different. So [sic] the State filed the new bill correcting the defects 11flthat were in the Bill of Information, Judge, as Your Hon- or will remember.
The record of the earlier case, 497-156C,[10] contains a letter dated 8 April 2010 from Lieutenant Christy Williams to *713 Brumfield explaining that the District Attorney’s Office had initiated an investigation into allegations that he had received funds to repair the house at 3407 Milan Street, but had failed to honor the contract with Taylor. The defendant was given ten days to produce records, documents, or witnesses’ statements proving that he had completed the work; if he failed to respond, a criminal prosecution would ensue. The District Attorney’s Office screening sheet indicates that the case was screened on 24 May 2010, and a charge of theft over $500 was accepted. The date of the offense was listed as 17 February 2006, the date that the contract was signed.
In the present case, the District Attorney’s screening sheet indicates that the case was again screened on 10 August 2010, and a charge of theft of things valued over $500 was accepted; the date of the offense is listed as 26 October 2006 in the 24 August 2010 bill of information.

D. Analysis

The issue is whether the bill of information of 24 August 2010 was filed within four years from the date the crime occurred pursuant to La.C.Cr.P. art. 572. Clearly, 17 February 2006 (used in the first bill), was not the date of the offense. No theft and no misappropriation occurred at that time. The state argues that this was an ongoing criminal act, which began when the defendant failed to complete 12pthe work as promised and continued up until and after 26 September 2006, when the complainants sent the letter to Brum-field demanding completion of the work or a refund within five days for work not done. However, in the second bill of information, the state alleges that the theft occurred on 26 October 2006, 30 days after the demand letter. We can find no law that supports the state’s arbitrary selection of a thirty-day period. According to Detective Carr’s testimony at the 19 January 2011 hearing, the demand letter was delivered to Brumfield on 26 October 2006. The only evidence to support her statement presumes that the letter mailed on 24 October 2006 was the same letter as that of 26 September 2006. Arguably, the fact that the complainants sent a demand letter indicated that they thought that the defendant might still refund their money for work he did not do. The fact that the complainants obtained a proposal from a second company on 28 April 2006 does not indicate that they realized Brumfield had misappropriated or taken money from them and that he did not intend to refund the money for work he had not done.[11]
According to Detective Carr’s testimony, Taylor did not report the theft to the District Attorney’s Office until 20 May 2010 (thereby contradicting 8 April 2010 as applicable to case 497-156C). Further, the supplemental unnumbered exhibits indicate that the complainants signed the packet on 11 January 2010. This case was screened on August 10, 2010, and the theft charge was accepted.
VI. Conclusion
From the record properly before us in case 499-731 C, the lack of facts establishes that the state failed to carry its burden of proof at the 16 February 2011 | ^hearing on the motion to quash. Among the many things we do not know is when Taylor and/or Walker knew or should have reasonably known that a theft had occurred. If they knew or should have known that Brumfield had completed a criminal act on or before 24 August 2006, then the new bill of information is pre *714 scribed. We do not know what kind of communications Brumfield, Taylor, and Walker had during the period of 3 April 2006 and 26 September 2006. Certainly, the complainants knew something was amiss well before 26 September 2006. And the supplemental unnumbered exhibits indicate that the complainants had incurred expenses of $7,000 for work on the premises on 30 May 2006, more expenses in early August 2006, and additional expenses in the first half of September 2006.
We note the slippery slope this case creates should we embrace the 26 September 2006 letter as the starting point of the four-year prescriptive period. That is, if Brumfield received and did not respond to the September 2006 letter, could Taylor and Walker have written another letter in 2008 demanding reimbursement, thereby allowing the state to say that the four years commenced in 2008, not on the earlier date? On the motion to quash, the state had the burden of proof, yet failed to call Taylor or Walker, or both, for they were essential witnesses to testify as to the date they believed that they were theft victims, especially given the long delay between the September 2006 letter and the date that the state first filed a bill of information.
We find that the state failed to carry its burden of proof at the 16 February 2011 motion to quash hearing by its failure to offer any evidence. At a minimum, the state should have incorporated some evidence from the 19 January 2011 hearing that might have sufficed to support the charge. Alternatively, we are 122Convinced that this is a case where collateral estoppel should be applied. See State v. Cotton, 00-0850, (La.1/29/01), 778 So.2d 569; see also La. R.S. 14:8 and Reporter Comments (1950).[12] Further, in the alternative, this matter is more appropriately characterized as a civil matter.
Accordingly, we reverse the judgment of the trial court that denied Alvin Brum-field’s motion to quash, and vacate his plea pursuant to State v. Crosby, and his resulting conviction and sentence.
REVERSED.

. Pursuant to 2010 La. Acts. No. 585 that amended La. R.S. 14:67, the $500 threshold has been increased to $1,500. The docket master in the record on appeal incorrectly indicates that Brumfield was charged with theft of $1,500 or more. However, Brumfield was charged in all bills of information with theft of $500 or more, the correct dollar amount for a theft pursuant to La. R.S. 14:67 B(l) for the dates at issue herein.

. In its appellee brief, the state indicates that Brumfield also pleaded guilty under North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), but the Boykin transcript and the minute entry do not mention an Alford plea. Such is not an assigned error on appeal.

. The state did not charge Brumfield under La. R.S. 14:202.1, relative to home improvement fraud. Home improvement fraud is committed when the contractor fails to perform any work during a 45-day period of time or longer after receiving payment. La. R.S. 14:202.1. We note a lack of clarity in the statute because it is unclear whether reference is made to the full payment under a contract or any installment payment under the contract. Here, Brumfield actually commenced work on the complainants’ property, making La. R.S. 14:202.1 inapplicable to him. We note the awkwardness and difficulties of trying to apply La. R.S. 14:67 to the facts of *705 this case. Nevertheless, see State v. Greene, 09-2723 (La. 1/19/11), 55 So.3d 775.

. The supplemental unnumbered exhibits indicate that one copy of this letter was mailed by certified mail to Brumfield on 26 September 2006 to a post office box address in Mar-rero, Louisiana: this letter was apparently never received by Brumfield because the letter was returned to the sender as unclaimed We presume that another copy of the letter was sent to Brumfield by certified mail on 24 October 2006 to an address on Westmere Street in Harvey, Louisiana. Although we are not certain that the second letter is identical to the 26 September 2006 letter, the supplemental unnumbered exhibits indicate it was received by Brumfield on 26 October 2006.

. The specific assignment of error in Brum-field’s appellate brief reads in its entirety: "The trial court erred in denying the motion to quash.”

. At the hearing, the state claimed that Ja’Nel provided an estimate, that the complainants had not hired Ja’Nel, and that the repairs were never made. However, defense counsel noted that, in the contractor fraud packet, the complainants indicated that they had hired a second contracting company. Yet the state did not dispute that fact at the hearing. (The packet, we believe, is contained in the supplemental unnumbered exhibits.)

. Res judicata is a civil law concept. However, our criminal law jurisprudence recognizes collateral estoppel as grounds to abate a subsequent prosecution. See State v. Cotton, 00-0850, p. 6 (La. 1/29/01), 778 So.2d 569, 574, where the Court stated:
This court has recognized Ashe's [Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) ] principle that collateral estoppel "is anchored in the Fifth Amendment guarantee against double jeopardy. In Louisiana, the application of the doctrine has been limited 'to those cases where it is required by Ashe v. Swenson " State v. Blache, 480 So.2d 304, 306 (La.1985), citing State v. Knowles, 392 So.2d 651, 655 (La.1981); State v. Doucet, 359 So.2d 1239, 1248 (La.1978). Thus, while the Louisiana protection against double jeopardy is broader than its federal counterpart, we apply the federal test of Ashe where collateral estoppel is concerned.

. The state argues that the period in which to prosecute the defendant was interrupted by his promises to refund the unearned portion until a reasonable period of time after the final demand was made on 26 September 2006. The state relies on La.C.Cr.P. art. 579, which provides interruptions to the set time periods for commencement of trial after the institution of prosecution (in C.Cr.P. art. 578), not at issue in this case. La.C.Cr.P. art. 579 provides in pertinent part:
A. The period of limitation established by Article 578 shall be interrupted if:
[[Image here]]
(3) The defendant fails to appear at any proceeding pursuant to actual notice, proof of which appears of record.
B. The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists.
We do not agree that the four-year period was ever interrupted or suspended.

. The date that the relationship ended might coincide with the date that the taking or misappropriation occurred.

. The record in 497-156C contains a Brum-field Construction invoice (approved on 17 February 2006 in the amount $10,500.00) that indicates the work to be done: on the first floor the contractor was to gut the walls, remove the sheetrock and ceiling tiles, and clean up; upstairs the contractor was to remove all appliances and kitchen cabinets, remove and install a portion of the sheetrock, install 50% of the windows, install new doors, and install a blue roof.

. Although there were different versions as to whether the complainants had hired another company in April 2006 or whether they had only obtained an estimate, regardless the complainants were still trying to get a refund in September.

. If the contractor has been an entity (e.g., a corporation or limited liability company) and a supervisor had pulled workmen from Taylor/Walker's job, would the entity or the supervisor been charged with a crime under La. R.S. 14:67? We think not. We find that a court would look upon the matter as civil in nature with a ten-year prescriptive period that commenced from the date of the breach. La. C.C. art. 3499. Because Brumfield is an individual, the result should be the same.