Judgment rendered May 21, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,262-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

JOSHUA DAESHUN DONSON                       Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2017-F-242

Honorable Walter M. Caldwell, IV, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Douglas Lee Harville


JOSHUA DAESHUN DONSON                 Pro Se


ROBERT S. TEW                        Counsel for Appellee
District Attorney


MICHAEL J. FONTENOT
S. CHARLOTTE FARSHIAN
Assistant District Attorneys

* * * * *

Before PITMAN, HUNTER, and MARCOTTE, JJ.

**PITMAN, C. J.**

Defendant Joshua Daeshun Donson appeals his convictions for armed robbery and second degree kidnapping and his sentences of 40 years at hard labor on each count, to be served concurrently and without benefit of parole, probation or suspension of sentence. For the following reasons, we affirm Defendant's convictions and sentences.

**FACTS**

On March 30, 2017, Defendant was charged by bill of indictment with one count of second degree murder of Cordale Walker, one count of conspiracy to commit armed robbery of Jareth Porter, one count of armed robbery with a handgun of Porter and one count of aggravated kidnapping of Porter, all of which occurred on January 19, 2017.

On March 6, 2023, the Ouachita Parish district attorney filed an amended bill of indictment against Defendant alleging that he committed an armed robbery, a violation of La. R.S. 14:64, on January 19, 2017, and second degree kidnapping, a violation of La. R.S. 14:44.1, while armed with a dangerous weapon, a handgun, when he forcibly seized Porter and carried him from one place to another with the intent to force him to give up anything of value in order to secure his release.

On May 15, 2023, the date of the trial, Defendant filed a notice of alibi in the record and reiterated an earlier claim that his attorney had filed a notice in 2018. The state filed a motion to have it declared untimely. The trial court held a hearing and found the notice of alibi was untimely and forbid testimony or evidence related to an alibi defense.[1]

---

[1] Defendant's alibi was that he claimed he was dropped off at Walker's house around 8:30 p.m. and that he called his mother, Carolyn Donaldson, to come back to pick

On May 16, 2023, a second amended bill of indictment was filed with the same charges as the first amended bill. Jury selection took place from May 15 - 17, 2023.

At trial, Porter was asked whether he could at any time, then or now, identify Defendant as one of the people involved in the incident, and he stated he could not. Thereafter, Porter testified that he was working for Domino's Pizza on January 19, 2017, and that around 9:40 p.m., he received a call for a delivery to 1106 North 8th Street in West Monroe. He drove to that location, parked on the street in front of the house and knocked on the door. Walker and a person who was later determined to be Defendant approached him, and one of them pointed a red spray-painted pistol at him. Both Walker and Defendant were completely covered, wearing black masks, hoodies and gloves and Porter could not identify either of them.

Porter was ordered to lie face down on the ground and close his eyes while his pockets were searched. His wallet containing his ID, about $15, credit cards and a debit card was stolen. His wallet was later recovered from a canal in 2019 during an unrelated police investigation.

While he was lying on the ground, Porter heard his truck door being opened and heard the truck stall. A gun was pointed at the back of his head, and he was told to get in his truck to turn it around. The truck had a manual transmission, and neither Walker nor Defendant knew how to drive it. Porter was ordered to drive the truck away while Defendant sat next to him and Walker rode in the truck bed with a gun. At the first stop sign, Porter was ordered to get out of the vehicle and lie on the ground, and Defendant

_____

him up between 9:10 and 9:15 p.m. He also claimed that when he got back home, he stayed there the rest of the night with his sister, Cameishia Donson.

2

told Walker to shoot Porter if he did not comply. A short time later, when Walker and Defendant still could not drive the truck, Porter was ordered into the driver's seat again. A police unit drove by and Defendant became agitated and ordered Porter to drive until he reached the intersection of North 7th and Drew Street, where he stopped. As he got out of his truck, Porter retrieved his own firearm from the driver's side doorframe. As Walker quickly approached him with the red gun in his hand, Porter fired three times and then ran for cover behind a tree. When Walker again seemed prepared to shoot at him, Porter fired additional rounds. Defendant approached Walker's prone body, seemed to remove something and then left. Porter approached Walker, retrieved Walker's phone and called 911. Walker no longer had a firearm in his possession. He died at the scene from his wounds.

At around 10:05 p.m., the West Monroe Police Department ("WMPD") received a "shots fired" call and responded to the scene. Detective Matt Graves arrived to investigate and stated that at the intersection where Walker's body lay, they found a Powerade bottle, a "Walmart style bag" with a camouflage fleece mask and a set of iPhone earbuds. Walker had on a "hockey-style" mask and blue latex gloves. Evidence was collected at the scene, but only DNA evidence from Walker was submitted for analysis. There was no DNA evidence collected at the scene related to Defendant. None of Defendant's fingerprints were found at the scene. Porter had been taken to the police station where he told detectives that he could not identify either assailant and that he had not seen Defendant holding a gun while sitting in the passenger's seat of the truck.

3

Later that night and early the next morning, two charges were made to Porter's Capital One card. A charge of $491.30 was made to pay the cable television bill of Lotoya Caston, and a $25 charge was made to pay her wireless bill. Porter notified the WMPD within days that the charges had been made and that he was contesting the charges with the bank. The WMPD contacted Caston, who was called as a witness.

Caston testified that Defendant came to her home on the night of the incident and wanted to watch television; however, her cable had been disconnected, so Defendant paid her cable and wireless bill. She described Defendant as nervous and panicked and testified that he told her several times that Walker was dead.

Dale and Charlene Worthy are Walker's parents. Charlene testified that Defendant came to their house around 8:00 p.m. on January 19, 2017, but did not come inside because she had banned him from her house the day before. Defendant texted her son (Walker) who was eating supper. Walker left the dinner table to meet Defendant outside and left with him between 8:30 and 10:00 p.m. Charlene testified that she saw Defendant with a red gun on his side. She stated that this was not the first time she had seen him with that red gun. The Worthys testified that they had known Defendant for ten years, two of which he had lived with them. Charlene stated that she would be able to recognize Defendant's voice. When she listened to the call to Domino's Pizza, she testified that Defendant was the person who ordered the Domino's Pizza.

Dale testified that Defendant came to his house and that Walker went outside to meet him. He opined that they left the house between 8:30 and

10:00 p.m. He also identified Defendant's voice when the Domino's Pizza recording was played.

Evidence was introduced concerning a similar incident that occurred February 4, 2015, when witness Roshondra Lynette Tugler testified that she had been robbed while attempting to deliver a pizza for Papa John's Pizza. She stated that when she went to deliver the pizza, several individuals wearing hoodies covering their faces approached her with a gun. They asked for her money and someone went to her car, but the car was not taken, only the money and the pizza. Detective Miranda Rogers of the Ouachita Parish Sheriff's Office investigated the robbery and traced the phone number from the pizza order to Defendant's phone; Defendant confessed to his participation. He pled guilty to simple robbery. Det. Rogers identified Defendant in the courtroom as the same person previously charged with the robbery in 2015.

Defendant's mother, Carolyn Donaldson, and sister, Cameishia Donson, testified that they lived together and that Defendant had never lived with anyone other than them. Both listened to the Domino's Pizza recording and stated that Defendant was not the person who ordered the pizza. Both denied ever seeing Defendant with a red gun.

A unanimous jury found Defendant guilty as charged. A motion for post-verdict judgment of acquittal was denied in August 2023. A presentencing investigation ("PSI") was ordered, to which Defendant filed an objection. He also submitted a sentencing memorandum and various other documents. The state replied to the objections to the PSI report.

On October 5, 2023, the sentencing hearing was held. Defendant's attorney called Tammy Jordan, chief investigator for the public defender's

office, to testify on his behalf with mitigating evidence. She stated that Defendant was 14 or 15 years old at the time of the earlier pizza robbery and that he was 19 years old during the commission of the instant crime. She also pointed out that he had always had mental health issues and that since she had known him, he had been trying to get his GED and further his education and skills to become an auto mechanic. She stated she did not usually step up and try to request leniency for their clients, but she felt that in this case, it was the right thing to do. She stated he had a good support system in his mother and sister.

The trial court noted that the penalty for violating La. R.S. 14:64, armed robbery, is not less than 10 years and not more than 99 years at hard labor without benefits and that the penalty for violating La. R.S. 14:44.1, second degree kidnapping, is not less than 5 nor more than 40 years at hard labor, with at least 2 years to be served without benefits. The trial court explained the reasons for imposing the sentence, citing factors in La. C. Cr. P. art. 894.1. It sentenced Defendant to 40 years at hard labor on each charge, to be served without benefit of parole, probation or suspension of sentence. The sentences are to be served concurrently, but consecutively to a sentence arising from a prior conviction for simple robbery committed by Defendant when he was a juvenile and for which Defendant had received a suspended sentence. His probation for that offense was revoked, and he was ordered to serve the original sentence.

A motion to reconsider sentence was filed, and Defendant's attorney argued that there would be no diminution of sentence because Defendant's crimes are crimes of violence. He stated that Defendant is very young and that by the time he would be released in 2063, he would be 59 or 60 years

6

old.  Despite the argument, the trial court denied the motion to reconsider the sentence and stated that the concurrent 40-year sentences are appropriate under the circumstances.

Defendant appeals his convictions and sentences.

## DISCUSSION

*Timeliness of Alibi Defense*

Defendant argues that the trial court committed legal error and an abuse of discretion in denying his alibi defense, finding that his notice of alibi had not been conveyed in a timely manner.   He cites La. C. Cr. P. art. 727 and states that it requires service of notice of an alibi on the state but does not require that it be filed in the record.  He points out that on May 15, 2023, his trial attorney submitted a copy of the notice of alibi dated July 31, 2018, when he realized that the state did not have a copy of the earlier-filed document.  This 2018 alibi notice is included in the record and is signed by his former attorney, Charles L. Brumfield.  The notice of alibi is also signed by his mother and his sister, who would have provided the alibi testimony, and is certified as having been mailed to the Office of the District Attorney of the Fourth Judicial District Court on August 6, 2018.

The state argues that there is no indication that it was in receipt of, or that it was even aware of, the notice of alibi prior to May 15, 2023, and that the notice of alibi was untimely.

La. C. Cr. P. art. 727 states in pertinent part as follows:

A. Upon written demand of the district attorney stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, or at such different time as the court may direct, upon the district attorney a written notice of his intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the

7

alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi.

B. Within ten days thereafter, but in no event less than ten days before trial, unless the court otherwise directs, the district attorney shall serve upon the defendant or his attorney a written notice stating the names and addresses of the witnesses upon whom the state intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses.

Subsection E states that for good cause shown, the trial court may grant an exception to any of the requirements of Subsections A though D of this article.

Before a district court may preclude a witness from testifying under La. C. Cr. P. art. 727, it must properly exercise its discretionary powers. *State v. Bias*, 393 So. 2d 677 (La. 1981). In determining whether a trial court properly exercises its discretion to exclude undisclosed alibi evidence, these elements should be considered: (1) the amount of prejudice that resulted from the failure to disclose, (2) the reason for nondisclosure, (3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events, (4) the weight of the properly admitted evidence supporting the defendant's guilt, and (5) other relevant factors rising out of the circumstances of the case. *Id., quoting United States v. Myers*, 550 F. 2d 1036 (5th Cir. 1977).

La. C. Cr. P. art. 727 requires that Defendant serve his response to the request for notice of the alibi defense within ten days after the state files a request for notice. This time period was clearly exceeded and the case has been ongoing since 2017. The trial court properly exercised its discretionary powers and considered the prejudice which would have resulted to both Defendant and the state, the reason for the nondisclosure and other relevant

8

factors arising out of the circumstances of the case. We find no abuse of discretion in the trial court's decision to exclude the alibi testimony. For the foregoing reasons, this assignment of error is without merit.

*Sufficiency of the Evidence*

Defendant argues that the evidence was insufficient to prove beyond a reasonable doubt that he committed the crimes of which he was accused. Defendant asserts that there was no DNA or fingerprint evidence placing him at the scene, and Porter (the victim) could not identify him because both of his assailants were covered with a mask. He contends that the state only offered circumstantial evidence in an attempt to connect him to the scene and that there was no evidence to establish where he and Walker went after they left the Worthys' home.

The state argues it presented enough evidence for the jury to conclude beyond a reasonable doubt that Defendant was the person who engaged in the robbery and kidnapping of the victim. It also argues that circumstantial evidence is sufficient upon which to base a guilty verdict and that every reasonable hypothesis of innocence was excluded under the facts presented in this case.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Bass*, 51,411 (La. App. 2 Cir. 6/21/17), 223 So. 3d 1242, *writ not cons.*, 18-0296 (La. 4/16/18),

239 So. 3d 830. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/6/09), 21 So. 3d 297.

The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Robinson*, 50,643 (La. App. 2 Cir. 6/22/16), 197 So. 3d 717, *writ denied*, 16-1479 (La. 5/19/17), 221 So. 3d 78. A reviewing court may not impinge on the fact finder's discretion unless it is necessary to guarantee the fundamental due process of law. *State v. Casey*, *supra*. The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442.

Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64. To convict a defendant of armed robbery, the state is required to prove: (1) a taking (2) of anything of value (3) from the person or in the immediate control of another (4) by the use or force of intimidation (5) while armed with a dangerous weapon. *State v. Metoyer*, 52,603 (La. App. 2 Cir. 2/27/19), 266 So. 3d 943, *writ denied*, 19-0605 (La. 6/3/19), 272 So. 3d 892.

10

"[T]he slightest deprivation for the slightest period of time ... the slightest segregation of the property moved the slightest distance is sufficient to satisfy the elements of a theft, which is part of the crime charged." *State v. Smith*, 47,285 (La. App. 2 Cir. 9/26/12), 105 So. 3d 744, *writ denied*, 12-2404 (La. 4/1/13), 110 So. 3d 577, *quoting State v. Neal*, 275 So. 2d 765 (La. 1973).

La. R.S. 14:44.1(A)(2) states that second degree kidnapping is the doing of any of the acts listed in Subsection B of this Section, including wherein the victim is used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony. La. R.S. 14:44.1(B)(1) defines kidnapping as the forcible seizing and carrying of any person from one place to another.

The state proved beyond a reasonable doubt that Defendant robbed Porter and forced him to drive his own truck from the scene of the robbery to another place. Even though Porter could not personally identify Defendant as one of his assailants, the other evidence presented at trial, including the Worthys' testimony, which placed him at their home prior to the robbery; the evidence that he left their home with their son, who was later killed at the scene of the crime; and their identification of his voice placing the order to Domino's Pizza; was sufficient to prove that he was a participant. Caston's testimony that Defendant came to her house in an agitated state saying that Walker was dead and then using Porter's credit card to pay her cable bill was also convincing evidence that Defendant took part in the robbery and kidnapping. For these reasons, the evidence was sufficient to prove all elements of both crimes beyond a reasonable doubt. Therefore, this assignment of error is without merit.

11

*Excessive Sentence*

Defendant argues that his sentences of 40 years at hard labor without benefit of probation, parole or suspension of sentence for each count are excessive because of his youth and based on his history of mental illness.

The state argues that the trial court properly followed all sentencing procedures, met the requirements of La. C. Cr. P. art. 894.1, ordered a PSI report and allowed witnesses to testify on his behalf. Finding no mitigating factors to outweigh the severity of the crimes, the trial court sentenced him to a period of incarceration within the parameters set forth in the law pertaining to these crimes. For these reasons, the state asserts the trial court's sentences were not excessive.

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the statute. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Collins*, 54,280 (La. App. 2 Cir. 3/9/22), 334 So. 3d 1098. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. Collins*, *supra*. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. Collins*, *supra*. There is no requirement that specific matters be given any particular weight at sentencing. *State v. Shumaker*,

41,547 (La. App. 2 Cir. 12/13/06), 945 So. 2d 277, *writ denied*, 07-0144 (La. 9/28/07), 964 So. 2d 351. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. *State v. Lanclos*, *supra*; *State v. Collins*, *supra*.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So. 2d 1, *citing State v. Bonanno*, 384 So. 2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Knight*, 54,236 (La. App. 2 Cir. 3/9/22), 335 So. 3d 502, *writ denied*, 22-00764 (La. 9/7/22), 345 So. 3d 426.

The trial court has wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of discretion. *State v. Abercrumbia*, 412 So. 2d 1027 (La. 1982). On review, an appellate court does not determine whether another sentence may have been more appropriate but whether the trial court abused its discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7, *citing State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957.

La. R.S. 14 :64(B) states that the penalty for armed robbery is imprisonment at hard labor for not less than 10 years and for not more than 99 years without benefit of parole, probation or suspension of sentence.

13

La. R.S. 14:44.1(C) states that the penalty for second degree kidnapping is imprisonment at hard labor for not less than 5 nor more than 40 years. At least 2 years of the sentence imposed shall be without benefit of parole, probation or suspension of sentence.

At the sentencing hearing, the trial court noted that both of the crimes involved in this incident were considered crimes of violence under La. C. Cr. P. art. 890.1 and that there was no eligibility for suspension or deferral of sentence pursuant to La. C. Cr. P. art. 893. It considered the factors in La. C. Cr. P. art. 894.1 and found that Defendant's actions constituted deliberate cruelty to the victim, that he knowingly created a risk of death or great bodily harm to more than one person, that he used threats of or actual violence in the commission of the offense and that a dangerous weapon was used during the commission of the offense. It also noted that Defendant was a leader in a supervisory position and that he used a firearm or other dangerous weapon while committing the offense and caused a substantial risk of physical force. It took cognizance of Defendant's prior conviction for the lesser charge of simple robbery for which he was on probation when he was convicted of the crimes at bar.

We find no abuse of discretion in the trial court's sentence of two concurrent 40-year terms of imprisonment without benefit of parole, probation or suspension of sentence in this case. The factors considered by the trial court were thoroughly stated, and the imposition of the terms of imprisonment fell within statutory limits. The sentences are not grossly disproportionate and do not shock the sense of justice. For the foregoing reasons, this assignment of error is without merit.

## CONCLUSION

For the reasons set forth above, the convictions and sentences of Defendant Joshua Daeshun Donson are affirmed.

**AFFIRMED.**